IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 12-1022

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DARRICK C. BOROCZK,
Defendant-Appellant.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division

THE HONORABLE RONALD A. GUZMAN, Judge Presiding
No. 09 CR 647

BRIEF AND REQUIRED SHORT APPENDIX
FOR DEFENDANT-APPELLANT

[FILED UNDER SEAL – REDACTED VERSION]

FEDERAL DEFENDER PROGRAM
Carol A. Brook
Executive Director

By:    William H. Theis
       55 E. Monroe Street, Suite 2800
       Chicago, IL 60603
       (312) 621-8300

Dated: May 17, 2012

## DISCLOSURE STATEMENT

The undersigned counsel of record for Defendant-Appellant Darrick C.

Boroczk furnishes the following list in compliance with Fed. R. App. P. 26.1 and

Circuit Rule 26.1:

1.      The full name of the only party represented is Darrick C. Boroczk.

2.      Darrick C. Boroczk is a natural person and not a corporation.

3.      In both the district court and the Court of Appeals, the Federal Defender

        Program has been and is the only law firm to appear on behalf of Mr.

        Boroczk.




                                        _s/ William H. Theis_____
                                          William H. Theis



Dated: May 17, 2012

i

# TABLE OF CONTENTS

**Page(s)**

DISCLOSURE STATEMENT.................................................. i

TABLE OF CONTENTS.................................................. ii

TABLE OF AUTHORITIES............................................. iv

JURISDICTIONAL STATEMENT........................................ 1

ISSUES PRESENTED FOR REVIEW.................................... 1

STATEMENT OF THE CASE.......................................... 1

STATEMENT OF FACTS............................................. 2

SUMMARY OF THE ARGUMENT...................................... 12

STANDARD OF REVIEW............................................ 12

ARGUMENT....................................................... 13

    I.    The district court's 70-year sentence was procedurally
        unreasonable, since the district court did not fully consider Mr.
        Boroczk's substantial argument that he had the capacity to be
        rehabilitated................................................. 13

    II.   The district court's 70-year sentence was substantively
        unreasonable................................................. 20

        A.    The 70-year sentence in this case carries no presumption of
            reasonableness......................................... 20

        B.    Regardless of whether the 70-year sentence in this case carries
            a presumption of reasonableness, the sentence is unreasonable,
            since it is more than necessary to comply with the goals set out
            in 18 U.S.C. § 3553(a)(2)................................ 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7). . . . . . . . . . . . . . . . . .  27

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30(d). . . . . . . . . . . .  28

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Following page 29

   Judgment and Commitment Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A. 1

   Excerpt from Sentencing Transcript. . . . . . . . . . . . . . . . . . . . . . . . . . . .  A. 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Gall v. United States*, 552 U.S. 38 (2007)................................. 13, 14

*People v. Vance*, 2011 Ill. App. Unpub. LEXIS 1659 (Ill. App. 2011)........ 9, 11, 16

*Rita v. United States*, 551 U.S. 338 (2007).............................. 20, 21, 23

*Setser v. United States*, 132 S. Ct. 1463 (2012)................................ 22

*United States v. Beier*, 490 F.3d 572 (7th Cir. 2007)............................ 25

*United States v. Buretz*, 411 F.3d 867 (7th Cir. 2005)........................... 14

*United States v. Booker*, 543 U.S. 220 (2005)................................ 13, 22

*United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005)...................... 14

*United States v. Huffstatler*, 571 F.3d 620 (7th Cir. 2009)....................... 25

*United States v. Pennington*, 667 F.3d 953 (7th Cir. 2012).................. 13, 14

*United States v. Villegas-Miranda*, 579 F.3d 798 (7th Cir. 2009)................ 14

**STATUTORY MATERIALS**

18 U.S.C. § 2251(a)........................................................ 1, 25

18 U.S.C. § 2252A(a)(5)(B)................................................... 1, 2

18 U.S.C. § 3231.............................................................. 1

18 U.S.C. § 3553....................................................... *Passim*

18 U.S.C. § 3584....................................................... *Passim*

18 U.S.C. § 3742.............................................................. 1

iv

18 U.S.C. § 4248. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

U.S.S.G. § 5G1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

## OTHER AUTHORITIES

Harris *et al.*, *Sex Offender Recidivism: A Simple Question,* ▆▆▆▆▆▆▆▆▆▆▆ (2004), available at www.psepc-sppcc.gc.ca. . . . . . . . . . . . . . . . . . . . . . . . 19

Karen Gelb, *Recidivism of Sex Offenders Research Paper* (2007) (Sentencing Advisory Council, State of Victoria, Australia), available at http://www.secasa.com.au/reports/Recidivism_Sex_Offenders_Research_ Paper.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

U.S. Sentencing Commission, *Sourcebook of Federal Sentencing Statistics*, Appendix A (2011), available at http://www.ussc.gov/ Data _and_Statistics/ Annual_Reports_and_Sourcebooks/2011/ SBTOC11.htm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## JURISDICTIONAL STATEMENT

This is a direct appeal of the sentence imposed for a criminal conviction. The prosecution was brought under 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B). The district court had jurisdiction of this case under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The judgment and conviction in this case was entered on December 27, 2011. A timely notice of appeal was filed on January 4, 2012. No motions that would have tolled the time for filing an appeal were filed.

## ISSUES PRESENTED FOR REVIEW

1. In this child pornography case, the district court imposed a 70-year sentence on a 34-year-old man with no prior record. The district court explained that it chose this sentence because it believed that the defendant was certain to re-offend for the rest of his life. Was this sentence procedurally unreasonable, since the district court did not consider a key fact that conflicted with the court's prognosis?

2. Was the 70-year sentence substantively reasonable?

## STATEMENT OF THE CASE

The indictment charged Mr. Boroczk under 18 U.S.C. § 2251(a) with four counts of using a minor under the age of 18 to engage in sexually explicit conduct

1

for the purpose of making a visual depiction of that conduct. A fifth count charged him under 18 U.S.C. § 2252A(a)(5)(B) with possessing a computer hard drive that contained video images of child pornography. Mr. Boroczk pleaded guilty to the five counts. The district court sentenced him to 15 years on each of the first four counts and to ten years on the fifth count, with the sentences to run consecutively, producing a sentence of 70 years in prison. This appeal challenges the sentence imposed.

## STATEMENT OF FACTS

**Indictment and Plea**

As Mr. Boroczk stated at his sentencing, his conduct, as spelled out in the indictment was "very monstrous." Tr. 158; A. 14.

Each of Counts 1 through 4 charged Mr. Boroczk with taking pornographic photos or videos of ███████████, who was three years old in 2006, when the photo in Count 1 was taken. The images in Counts 2 through 4 were taken in 2007 and 2008. Count 5 charged him with possession of a computer hard drive that contained 300 photos and videos of ████████████████, in addition to 8,452 photos and 186 videos of child pornography involving other children. Gov't Version of the Offense 1-3, attached to the PSR.

2

Mr. Boroczk pleaded guilty to all five counts in the indictment. There was no plea agreement, but Mr. Boroczk filed a plea declaration. R. 28. He also signed an agreed statement of facts that amplified the allegations in the indictment. As recited in the agreed statement of facts, the photo in Count 1 showed ███████ █████ lying on her back with his erect penis pressing against her vagina. The photo in Count 2 shows ████████ with her genitals exposed, and he is holding his erect penis in his hand. R. 27, at 2. The video in Count 3 shows ███ █████ genitals exposed to the camera, and at various times he touches her vagina and performs oral sex on her. The video in Count 4 shows ██████████ genitals, and he touches and kisses her breasts and her vagina. As charged in Count 5, his computer's hard drive contained numerous still and video child pornography images. The images referenced in Counts 1 and 2 were sent to other individuals over the internet. R. 27, at 1-3, which relates uncharged relevant conduct.

**Pre-sentencing Submissions**

The defense presented written reports from two psychologists to explain why Mr. Boroczk, who had no previous criminal record, had the potential for rehabilitation. Shortly after his arrest, Mr. Boroczk voluntarily began weekly counseling sessions with Dr. Mickey Morgan, a licensed psychologist. Dr.

3

Morgan authored two reports in which he presented expert opinion that Mr. Boroczk had already taken major steps toward rehabilitation and had good long-term prospects for rehabilitation. In his report dated December 1, 2010, R. 40, Ex. I, Dr. Morgan documented Mr. Boroczk's initial belief that he had done nothing harmful to ███████. Through their weekly counseling sessions, spanning over a year from arrest to the date of the report, Mr. Boroczk came to understand that his conduct had indeed been harmful. Dr. Morgan attributed this initial reluctance to Mr. Boroczk's addiction to internet pornography. By December 2010, Mr. Boroczk fully accepted the wrongfulness of his conduct. Dr. Morgan concluded, "Clinical prognosis for successful long-term rehabilitation is excellent with continued sincere efforts in treatment." *Id.* at 3.

Dr. Morgan continued to treat Mr. Boroczk, and he wrote a second report on July 21, 2012, shortly before the sentencing date. Dr. Morgan related Mr. Boroczk's steady progress. He opined that Mr. Boroczk's "specific type of Internet originated pedophilia addiction is one of the most treatable" and that Mr. Boroczk "tends to have a significantly better prognosis not to re-offend." *Id.* at 4.

The court also received a 22-page report from Dr. Michael H. Fogel, R. 40, Ex. J, a board-certified forensic psychologist. Dr. Fogel was requested to give an

opinion on Mr. Boroczk's rehabilitative potential and his risk for future hands-on sexual offending. Dr. Fogel recounted Mr. Boroczk's path from viewing adult pornography on the internet to viewing child pornography and eventually creating child pornography. Pornography can become an addiction, and as with any addiction, the addict can crave stronger forms of the addictive material. Mr. Boroczk's case illustrated the course of an addiction.

Dr. Fogel concluded that Mr. Boroczk was at low risk to commit a future hands-on sexual offense. Mr. Boroczk lacked many of the static (unchangeable) factors that lead to recidivism. "Empirically-based risk factors that do not apply to Mr. Boroczk include prior criminal history, prior sexual offending, resistance to rules and supervision, employment instability, having never been married, and ███████████ victims." *Id*. at 20-21. Through counseling, Mr. Boroczk had come to acknowledge the destructiveness of his addictive behavior. Dr. Fogel saw no barriers to a successful treatment outcome. Mr. Boroczk did not suffer from any type of mental illness that would preclude successful treatment. Dr. Fogel specifically noted that the scientific consensus is that ████████ have a lower recidivism rate than ████████████. *Id*. at 21. In reaching these conclusions, Dr. Fogel relied on 10 hours of forensic interviews with Mr. Boroczk, an interview of Dr. Morgan, various case-related documents, and psychological

testing (the test administration was not counted as part of the 10 hours of interviews).

The court also received a letter from Mr. Boroczk, as well as letters from family members and friends. R. 40, Exs. B, G, L, N, O. Among those writing letters were his ███████████████████████. Each attested to a close relationship with him and his positive influence. Ex. O.

Shortly before the sentencing hearing, the government presented a two-page report from Dr. Tracy L. Rogers. R. 40, Ex. P. She reviewed Dr. Fogel's report and voiced the opinion that Dr. Fogel did not have "sufficient evidence to offer an opinion on risk at this time." Specifically, she faulted Dr. Fogel for not using actuarial measures of risk for re-offending, for not employing penile plethysmograph (PPG) testing, and for not reporting whether Mr. Boroczk could be classified as a pedophile. Her opinion was limited to her perceived short-comings of Dr. Fogel's report, and she did not provide her own assessment of risk, since she readily admitted that she had not examined Mr. Boroczk or considered his case in light of the methodologies she maintained should have been employed.

The government presented to the probation department a government's version of the offense. Attached to this version of the offense was a report of

interview with Mr. Boroczk, who was questioned shortly after his arrest. In addition to admitting the conduct that would become the counts in the indictment, Mr. Boroczk stated to the arresting agents that ██████████ seemed to be having a good time while he was photographing them. He did not think he was hurting them. He never forced them to do anything. If they had protested, he would have stopped. Page 11 of interview report, attached to PSR.

The PSR calculated Mr. Boroczk's adjusted guidelines level to be 43. He was placed in criminal history category I, since he had no prior offenses. His advisory guidelines sentence was life in prison, although none of the five counts carried a maximum sentence of life. Ultimately, the defense had no objection to the probation officer's calculation of the guidelines, but it requested a below-range sentence in the neighborhood of 15 years, the mandatory minimum for any one of the first four counts.

**Sentencing Hearing**

Dr. Fogel and Dr. Rogers each testified at the sentencing hearing. The court also heard victim impact statements, as well as Mr. Boroczk's allocution.

At the hearing, Dr. Fogel reviewed his meetings with Mr. Boroczk. Based on psychological testing, he concluded that Mr. Boroczk had approached the evaluation process in an open and honest manner. Tr. 25. Dr. Fogel reiterated his

opinion that Mr. Boroczk was at low risk to commit a contact sex offense in the future. Tr. 29. He noted that ████████████ have a lower recidivism rate than ██████████████. Studies have concluded that for ██████████, there is a 13% rate of recidivism over a 15-year period. Tr. 30. Also, Mr. Boroczk had no prior criminal history, had a stable employment history, and had a long-term family situation. These factors supported a low-risk finding. Tr. 31-32.

In addition, since Mr. Boroczk was facing a minimum of 15 years in prison, his age at the time of release from a 15-year sentence would be a factor supporting a low-risk assessment. Tr. 45. Although Dr. Fogel's written report had not specifically dealt with the risk of Mr. Boroczk's committing another child pornography offense, Dr. Fogel testified that Mr. Boroczk was at low risk of committing a non-contact child pornography offense. Tr. 38.

He further testified that after being informed of Dr. Rogers' letter, he went back and conducted an actuarial assessment of Mr. Boroczk, as recommended by Dr. Rogers, and that the actuarial assessment paralleled his view that Mr. Boroczk was in the low-risk category. Tr. 46. Finally, he explained that the label pedophile did not have any impact on his assessment of risk for Mr. Boroczk. Tr. 52.

The government's cross-examination focused on the issue of pedophilia, Tr. 59-65, which Dr. Fogel dismissed as a label that did not tell the whole story of recidivism. The government attempted to impeach Dr. Fogel by referring to an unpublished Illinois Appellate Court opinion that reviewed a proceeding under the Illinois Sexually Violent Persons Commitment Act in which Dr. Fogel had testified for the state in favor of commitment. *People v. Vance*, 2011 Ill. App. Unpub. LEXIS 1659 (Ill. App. 2011). The government did not proffer a transcript of Dr. Fogel's testimony in *Vance*. Instead, it relied on the unpublished appellate opinion, which summarized the testimony of Dr. Fogel and a colleague; the summary did not attribute specific testimony to either doctor individually, but instead presented what seems to have been a composite of testimony given by the two doctors. According to this composite summary, Dr. Fogel and his colleague believed Vance was a pedophile, but their opinion of his risk for recidivism was based on several factors beyond the pedophilia label. Vance lacked remorse for his conduct, violated terms of his supervised release, and failed to complete sex offender treatment. In addition, his supervised release was violated after his parole officer searched his apartment and found a number disturbing items: weapons, child pornography, and letters with a 15-year-old discussing sexual topics.

At the hearing, Dr. Rogers repeated her criticisms of Dr. Fogel's opinion. She did not offer any opinion as to Mr. Boroczk's risk of re-offending. Tr. 105, 115. She did acknowledge that Dr. Fogel's scoring of the actuarial test was correct and that the test results placed Mr. Boroczk in a low risk category for recidivism. Tr. 119. She maintained her position that Mr. Boroczk should have been subjected to PPG testing, but admitted that there are doubts about the validity of the procedure. Tr. 117.

**District Court's Statement of Reasons**

At the conclusion of the hearing, the district court explained its sentence. It began with the observation that the calculated guideline range was life in prison. Tr. 159; A. 15. It then turned to a consideration of the factors set forth in 18 U.S.C. § 3553. It characterized the offense as one that "no civilized society can possibly allow no matter what the circumstances." *Id*. It regarded the need for general deterrence as high, since the offense cannot be tolerated. But it focused most of its attention on specific deterrence and protection of the public, factors that it viewed as intertwined.

Turning to the testimony of the two experts, it found that "Dr. Fogel's opinion as to the risk of recidivism is just simply not sufficiently reliable." Tr. 160; A. 16. This finding was based, in part, on the court's belief that "some of Dr.

Rogers' criticisms [were] valid," Tr. 160; A. 16, although the court did not identify

which of those criticisms were valid. The court also declared that Dr. Fogel's

testimony about the significance of a pedophilia diagnosis was "confusing," since

the court believed Dr. Fogel's testimony in this case was "irreconcilable" with his

testimony in the *Vance* case. Tr. 161; A. 17. The court made no mention of Dr.

Morgan's reports nor of Dr. Fogel's reliance on Dr. Morgan's reports.

The court placed emphasis on Mr. Boroczk's statement immediately after

arrest. The court believed that his statement "reflect[ed] a total lack of

comprehension of how any such conduct was inherently and permanently

harmful to ███████." Tr. 161; A. 17. This mindset, the court observed, gave a

clue to the "real risk for the future." Tr. 161; A. 17. The court stated its belief that

Mr. Boroczk for the rest of his life was certain to re-offend and that no amount of

supervision could possibly protect other children in the future from Mr. Boroczk.

Tr. 161-62; A.17-18.

The court imposed a sentence of 70 years in prison. The sentencing package

consisted of 15 years on each of the first four counts and 10 years on the fifth

count, with all five sentences to be served consecutively to the others. Tr. 162; A.

18. The court further recommended that while in prison Mr. Boroczk participate

in a sex offender treatment program. The court also ordered a lifetime term of

11

supervised release, with a number of conditions, including sex offender treatment, non-access to a computer, and no contact with minors. Tr. 162-63; A. 18-19.

Mr. Boroczk filed a timely notice of appeal. His projected release date is, as reflected on the Bureau of Prisons website, July 24, 2070.

## SUMMARY OF THE ARGUMENT

The district court's sentence was procedurally flawed. It imposed a sentence of 70 years on Mr. Boroczk, a first-time offender, because the court believed Mr. Boroczk was certain to recidivate for the rest of his life. In making this prognosis, the court passed over without comment undisputed evidence that stood in the way of the court's conclusion.

This procedurally flawed sentence was also substantively unreasonable. Congress has declared that 30 years is the maximum punishment for the conduct in question. That the government chose to charge five counts in the indictment provided no warrant for a sentence of 70 years.

## STANDARD OF REVIEW

The Court applies de novo review to sentencing procedures. That review includes the district court's calculation of the guidelines, the district court's consideration of the sentencing factors found in 18 U.S.C. § 3553(a), and the

district court's statement of the factors upon which the individual sentence is based. *United States v. Pennington*, 667 F.3d 953, 956 (7th Cir. 2012).

When a defendant challenges the substantive reasonableness of a sentence, the standard of review is abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## ARGUMENT

### I.    The district court's 70-year sentence was procedurally unreasonable, since the district court did not fully consider Mr. Boroczk's substantial argument that he had the capacity to be rehabilitated.

Under the sentencing guidelines, Mr. Boroczk's advisory range was life in prison. He argued for a below-range sentence of 15 years in prison, the mandatory minimum for Counts 1 through 4. In response, after referring to the calculated range as the "start" of the sentencing process, the district court concluded that a sentence of 70 years in prison would be imposed. This decision was procedurally flawed.

After *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory, and a district court has the authority to give a non-guidelines sentence. The district court is not allowed to presume that a guideline sentence is the proper sentence in any case. Rather, the court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the proper sentence. That injunction

has special force when the court, as it did in this case, imposes consecutive terms. Under 18 U.S.C. § 3584(b), the court is specifically commanded to consider the section 3553(a) factors when it imposes consecutive terms of imprisonment.

This Circuit has emphasized that the district court must respond to a defendant's non-frivolous arguments for a below-range sentence and "must state its reasons for rejecting a defendant's principal arguments if the arguments have merit." *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009). In fulfilling that duty, the district court must do more than give a generalized statement that it has considered the arguments of the parties. *United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005). The record must confirm that, "the judge has given meaningful consideration to the [18 U.S.C.] section 3553(a) factors." *United States v. Buretz*, 411 F.3d 867, 878 n.11 (7th Cir. 2005). This requirement was emphatically confirmed in *Gall v. United States*, 552 U.S. 38, 50 (2007), in which the Court confirmed that the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." A district court's compliance with this directive is considered under a de novo standard of review. *United States v. Pennington*, 667 F.3d 953, 956 (7th Cir. 2012).

14

Mr. Boroczk argued that he had the capacity to be rehabilitated; that is, his risk of recidivism was low enough that a 15-year sentence, the mandatory minimum on Counts 1 through 4, would be sufficient to satisfy the sentencing factors set out in 18 U.S.C. § 3553(a). In response, the district court imposed a 70-year sentence. The district court concluded that Mr. Boroczk for the rest of his life would be certain to commit another hands-on offense. In reaching this conclusion, the district court focused on two facts: (1) Mr. Boroczk repeatedly molested ███████████; and (2) shortly after his arrest, he stated that he did not think his actions harmed them in any way. This conclusion was procedurally flawed, since the court did not acknowledge three strands of evidence that were substantial obstacles to this conclusion.

Before analyzing the shortcomings of the court's conclusion, it is essential to grasp the court's holding. Although Mr. Boroczk presented expert testimony that he had a low risk of re-offending after being released from a 15-year sentence, the mandatory minimum, the court's conclusion went well beyond a rejection of that position. Instead, the court concluded that Mr. Boroczk was certain to re-offend for the rest of his life. The court had no expert opinion to that effect, certainly none from the government's witness, who initially refused to render an opinion about Mr. Boroczk's risk of re-offending, but at the hearing

15

admitted that the actuarial test she championed put him in the low-risk category.[1] And regardless of what the court thought of Dr. Fogel's opinion, its rejection of that testimony would not affirmatively support a judgment of certain recidivism for the rest of Mr. Boroczk's life.[2] That judgment, as reported above, rested solely on the court's belief that when one repeatedly molests ███████ ██████and shows no remorse, one will always be certain to recidivate. That belief, however, was in marked tension with the actual record, and the court made no effort to explain why it chose to ignore substantial evidence in the record.

First, although Mr. Boroczk's molesting ███████████was despicable and horrific, it hardly made him a certain recidivist for the rest of his life. The undisputed evidence in the record was that████████████are less likely to re-offend than███████████, Tr. 30, testimony supported by the scientific

_____

[1] It should be noted that the government's witness thought any assessment should be based on additional tools, like PPG, but the point is that neither witness supplied the court with the basis for its extreme prognosis that Mr. Boroczk was certain to re-offend for the rest of his life.

[2] The district court thought Dr. Fogel's testimony about pedophilia was confusing and irreconcilable with his testimony in *Vance*. But the district court made no effort to square that thought with the fact that████████████generally have the lowest rate of reoffense. One study of████████████has reported that over a 12-year period only 6.4% had committed a new sexual offense, which compares to a 15.1% rate for████████████████. Karen Gelb, *Recidivism of Sex Offenders Research Paper* ██ (2007) (Sentencing Advisory Council, State of Victoria, Australia), available at http://www.secasa.com.au/reports/Recidivism_Sex_Offenders_Research_Paper.pdf.

literature. One study of ███████████ has reported that over a 12-year period only 6.4% had committed a new sexual offense, which compares to a 15.1% rate for ██████████████████. Karen Gelb, *Recidivism of Sex Offenders Research Paper* ██ (2007) (Sentencing Advisory Council, State of Victoria, Australia), available at http://www.secasa.com.au/reports/ Recidivism_Sex_Offenders_Research_Paper.pdf. If the court wanted to reject the accepted data in this field, which supported Dr. Fogel's testimony, it should at least be required to make that rejection explicit and then explain why it was rejecting the data. Otherwise, its conclusion merely masks an understandable revulsion for the defendant's conduct, but does nothing to focus on the subject under consideration—future risk.

Second, on the issue of remorse, the court ignored a key part of the record, focusing on Mr. Boroczk's statement immediately upon arrest and not dealing with the progress Mr. Boroczk had made during the many months between arrest and sentencing. Both Dr. Morgan and Dr. Fogel expressed the opinion that Mr. Boroczk had good prospects to be rehabilitated and not to re-offend. Dr. Morgan's reports were particularly important, since he detailed Mr. Boroczk's transition over many months from denial that he had done anything wrong to acceptance that he had indeed engaged in harmful conduct.

Yet the district court made no mention of Dr. Morgan's reports, nor did it question the sincerity of Mr. Boroczk's statements during his counseling sessions with Dr. Morgan or in allocution. Instead, the court focused on Mr. Boroczk's statement shortly after his arrest that he did not think his conduct hurt ███ ██████. "I find the defendant's own statements at the time of his arrest most revealing. . . . And, therein, it appears to me, lies the real risk for the future." Tr. 161; A. 17. But the court made no mention of the fact that Mr. Boroczk's warped view had been straightened out as the result of numerous counseling sessions with Dr. Morgan. Yes, Mr. Boroczk had at one time harbored a totally unacceptable belief, and, as noted in Dr, Morgan's report, he adhered to that belief for a considerable period of time. By the time of sentencing, however, Mr. Boroczk had abandoned that belief and had demonstrated genuine remorse, a precondition to rehabilitation. Dr. Morgan documented this transformation and gave the expert opinion that Mr. Boroczk had great potential for rehabilitation. The court's resolution of the rehabilitation issue proceeded as if there had been no weekly counseling sessions with Dr. Morgan and no reports by Dr. Morgan attesting to Mr. Boroczk's rehabilitative potential.

If the court had considered Dr. Morgan's reports and had rejected them with an explanation of why it found the reports wanting, this Court would

review any factual findings for clear error and would review the reasonableness of the court's conclusion about rehabilitation potential. But the district court made no mention of Dr. Morgan's reports and gave this Court no basis to perform its duty as a reviewing court. As noted above, a district court has a duty to acknowledge and comment upon significant information brought to its attention. Mr. Boroczk's post-arrest statement reflected a totally unacceptable mindset, but the court erred in ignoring evidence that Mr. Boroczk had abandoned this mindset. The court was not obliged to accept this evidence, but it was not allowed to act as if this evidence were not a part of the record. A district court does not provide procedural justice when it ignores significant information that is at odds with its bottom-line decision. In this case, the district court's finding about rehabilitative potential is flawed and impermissible because it gave no consideration to a significant piece of information that bore directly on the sentencing factor uppermost in the court's mind.

The district court ignored another important strand of evidence in the record. All the scientific studies agree that the risk of re-offending, for sex offenders in particular and for all offenders in general, decreases with the offender's advancing age. Harris *et al.*, *Sex Offender Recidivism: A Simple Question*, ████████████ (2004), available at www.psepc-sppcc.gc.ca. Yet the district

19

court in considering a middle-aged man who was facing a minimum of 15 years in prison made no mention of this important factor; it turned a blind eye to a fact that has real significance for risk prediction.

## II.     The district court's 70-year sentence was substantively unreasonable.

Even though a sentence may have been imposed in a procedurally reasonable manner, it can nonetheless be substantively unreasonable. A sentence is substantively unreasonable if it exceeds punishment that is "sufficient, but not greater than necessary," to comply with the goals of 18 U.S.C. § 3553(a)(2). In *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court recognized that all sentences are open to review for both procedural and substantive reasonableness. *Rita* declared that a sentence within the defendant's calculated range carries a presumption of substantive reasonableness, but *Rita* also cautioned that the "presumption is not binding. It does not, like a trial-related presumption, insist that one side, or the other, shoulder a particular burden of persuasion or proof lest they lose their case." *Id*. at 347.

### A.     The 70-year sentence in this case carries no presumption of reasonableness.

A *Rita* presumption should not apply to this case. *Rita* did not deal with and does not control a situation in which the guideline range exceeds the statutory maximum and the court stacks consecutive sentences. Moreover, a

statutory provision imposes a framework that is in no way tied to the *Rita*
presumption. Section 3584 of Title 18, U.S. Code, a section enacted in 1984, deals
with the imposition of concurrent and consecutive sentences. When sentences for
multiple offenses are imposed at the same time, the court can make them either
concurrent or consecutive. If the court makes no specific statement, then the
sentences will run concurrently. Section 3584 establishes, then, a presumption in
favor of concurrent sentences. The court must "consider, as to each offense for
which a term of imprisonment is being imposed, the factors set forth in section
3553(a)." This consideration extends to the designation of consecutive versus
concurrent, as well as to the sentences attached to each count.[3] Although judges
have broad discretion to choose between consecutive and concurrent sentences,

---

[3] Section 3584 provides as follows:

(a) Imposition of concurrent or consecutive terms.--If multiple terms of imprisonment
are imposed on a defendant at the same time, or if a term of imprisonment is imposed
on a defendant who is already subject to an undischarged term of imprisonment, the
terms may run concurrently or consecutively, except that the terms may not run
consecutively for an attempt and for another offense that was the sole objective of the
attempt. Multiple terms of imprisonment imposed at the same time run concurrently
unless the court orders or the statute mandates that the terms are to run consecutively.
Multiple terms of imprisonment imposed at different times run consecutively unless the
court orders that the terms are to run concurrently.
(b) Factors to be considered in imposing concurrent or consecutive terms.--The court, in
determining whether the terms imposed are to be ordered to run concurrently or
consecutively, shall consider, as to each offense for which a term of imprisonment is
being imposed, the factors set forth in section 3553(a).
(c) Treatment of multiple sentence as an aggregate.--Multiple terms of imprisonment
ordered to run consecutively or concurrently shall be treated for administrative
purposes as a single, aggregate term of imprisonment.

*Setser v. United States*, 132 S. Ct. 1463, 1468 (2012), section 3584 has placed a

constraint on that discretion that did not previously exist.

The Sentencing Commission has promulgated a guideline that attempts to

implement section 3584. That guideline, U.S.S.G. § 5G1.2(c),[4] favors concurrent

terms. However, under U.S.S.G. § 5G1.2(d),[5] if the guideline sentence exceeds the

statutory maximum on the count with the highest penalty, then the court is

advised to impose the maximum sentence on that count, and impose consecutive

sentences on other counts to bring the total sentence within the calculated range.

Guideline section 5G1.2(d) stands in tension with 18 U.S.C. § 3584(b). The

statutory provision singles out consecutive sentences for special consideration;

the court is required to consider the requirements of section 3553(a) as they relate

to each count. This required procedure is much more refined than the rule stated

in U.S.S.G. § 5G1.2(d), since the guideline favors consecutive sentences and the

statute does not. Although, as with any guideline in the post-*Booker* world, the

---

[4] U.S.S.G. § 5G1.2(c) provides as follows: If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law.

[5] U.S.S.G. § 5G1.2(d) provides as follows: If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

court must nonetheless consider section 3553(a), section 3584(b)

emphasizes—and has emphasized since 1984—that a consecutive sentence calls

for focused attention on the requirements of section 3553(a). A *Rita* presumption

does not mesh with the statutory presumption.

Nor is it clear that, even apart from section 3584(b), the district court

imposed the sort of guideline sentence to which *Rita* would give a presumption.

Under section 5G1.2(d), to implement a life sentence, the court was supposed to

impose the maximum sentence of 30 years on Count 1, and then impose

consecutive sentences on the others counts until the total sentence reached "life."

The district court strayed from this advice in two ways. First, it imposed the

**minimum** sentence on each of the four counts, albeit to run consecutively, a

sentencing package at odds with the guideline. Second, a sentence of 70 years

should be considered above the range of life. The Sentencing Commission treats

life sentences as 470 months. U.S. Sentencing Commission, *Sourcebook of Federal*

*Sentencing Statistics*, Appendix A (2011), available at http://www.ussc.gov/ Data

_and_Statistics/ Annual_Reports_and_Sourcebooks/2011/SBTOC11.htm. For

these reasons, it is a misnomer to say that the 70-year sentence is within the

range, and the 70-year sentence is not entitled to a *Rita* presumption.

23

B.    Regardless of whether the 70-year sentence in this case carries a
presumption of reasonableness, the sentence is unreasonable, since it is
more than necessary to comply with the goals set out in 18 U.S.C. §
3553(a)(2).

As all recognize, there is no specific amount of years that can be called a

reasonable sentence, with the result that all other sentences are deemed

unreasonable. Reasonableness denotes a range, not a specific point on a range.

This insight reflects that a sentence must be judged in light of all four goals set

forth in 18 U.S.C. § 3553(a)(2), but that these goals do not provide an algorithm.

Nonetheless, the 70-year sentence imposed in this case does not fall anywhere

within a range that would be considered reasonable.

We start with the undeniable fact that the maximum statutory sentence on

each of the first four counts was 30 years. Congress believed that a sentence of 30

years or less for this offense would satisfy the requirements of 18 U.S.C. §

3553(a)(2). There is no reason to think that four instances of the same conduct

would call for 120 years in prison. Mr. Boroczk's four offenses did not make him

four times more dangerous or four times more likely to re-offend.

Although the judge had the authority to consider a sentence of 120 years,

that theoretical possibility by no means indicates that such a sentence would be

reasonable, especially when the possibility is driven entirely by the prosecutor's

decision to charge four counts instead of one. One can find numerous instances of

24

a prosecutor's charging only one offense under 18 U.S.C. § 2251(a), even though the defendant committed additional offenses of the same sort. *E.g., United States v. Huffstatler*, 571 F.3d 620 (7th Cir. 2009) (defendant also had a record of numerous violent felonies); *United States v. Beier*, 490 F.3d 572 (7th Cir. 2007). The charging decision to bring multiple counts does not validate a stacking of consecutive sentences. Although the executive has the authority to charge multiple offenses, that discretion does not rationalize the total sentence imposed by the court.

When we look at the goals embodied in 18 U.S.C. § 3553(a)(2), they do not point to 70 years as a sentence that resides in a reasonable range. A sentence over 30 years amounts to "overkill." A sentence of 70 years is especially excessive in relation to the need to protect the public and provide specific deterrence to Mr. Boroczk, the two goals that weighed most heavily with the district court. Dr. Fogel's assessment put Mr. Boroczk at a low risk of re-offending.

Even if the district court might harbor a fear that 15 years down the road Mr. Boroczk would still be a threat to child victims, the law provides a workable mechanism for dealing with that possibility. Under 18 U.S.C. § 4248, the government can institute civil commitment proceedings against a person who is thought to be sexually dangerous. That proceeding would examine Mr. Boroczk's

25

situation after many years of imprisonment, including, if the Bureau of Prisons follows the court's recommendation, sex offender treatment. That proceeding would take into account an extensive history that would be developed during a substantial period of incarceration and treatment. When the tool of civil commitment was available, and when Mr. Boroczk had a good prospect for rehabilitation, it was unreasonable to impose imprisonment in excess of the 30-year maximum decreed by Congress.

## CONCLUSION

For these reasons, it is respectfully requested that the case be remanded for re-sentencing in accordance with the Court's opinion.

Dated this 17th day of May, 2012, at Chicago, Illinois.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Carol A. Brook
Executive Director

By:     *s/ William H. Theis*
        William H. Theis
        55 E. Monroe Street
        Suite 2800
        Chicago, IL 60603
        312.621.8300

## CERTIFICATE PURSUANT TO APPELLATE RULE 32(a)(7)

I, William H. Theis, hereby certify that this brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a)(7), in that Petitioner-Appellant opening brief contains 5,984 words. This certification is based on the word count of Corel Word Perfect 14.0, the word processing program used in preparing Petitioner-Appellant's opening brief.

FEDERAL DEFENDER PROGRAM
Carol A. Brook
Executive Director

By:    *s/ William H. Theis*
       William H. Theis
       55 E. Monroe Street
       Suite 2800
       Chicago, IL 60603
       312.621.8300
       *Attorney for Petitioner-Appellant*

Dated: May 17, 2012

## APPENDIX STATEMENT PURSUANT TO CIRCUIT RULE 30(d)

The undersigned, counsel for Appellant, hereby states that all of the

materials required by Circuit Rules 30(a) and 30(b) are included in the Appendix,

filed and bound herewith.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Carol A. Brook,
Executive Director

By: _s/ William H. Theis_
       William H. Theis
       55 E. Monroe Street
       Suite 2800
       Chicago, IL 60603
       312.621.8300
       _Attorney for Petitioner-Appellant_

Dated: May 17, 2012

**CERTIFICATE OF SERVICE**

I, William H. Theis, certify that on May 17, 2012, I electronically filed the foregoing with the clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                          *s/ William H. Theis*
                                                            William H. Theis

Dated: May 17, 2012

29

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| DARRICK C. BOROCZK | Case Number:    09 CR 647 |
| | USM Number:    41411-424 |
| | HELEN KIM |
| | Defendant's Attorney |

## THE DEFENDANT:

X pleaded guilty to count(s)    One, Two, Three, Four and Five

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §2251(a) | Sexual Exploitation of a Minor | 7/30/2009 | One,Two,Three,Four |
| 18 U.S.C. §2252A(a)(5)(B) | Possession of Material Containing Child Pornography | 7/30/2009 | FIve |

      The defendant is sentenced as provided in pages 2 through    10    of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s)   ALL REMAINING COUNTS      ☐ is   X are  dismissed on the motion of the United States.

      It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2 AUGUST 2011
Date of Imposition of Judgment

Signature of Judge

RONALD A. GUZMAN    - U.S. District Judge
Name and Title of Judge

DEC. August 22, 2011
Date

U.S. DISTRICT COURT

2011 DEC 22 PM 4: 57

FILED

A. 1

DEFENDANT:        BOROCZK, Darrick C.
CASE NUMBER:      09 CR 647

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

ONE HUNDRED EIGHTY (180) MONTHS ON EACH OF Counts One, Two, Three, and Four to run consecutively to each other; and ONE HUNDRED (120) MONTHS on Count Five; the sentence on Count Five shall run consecutively to Counts One, Two, Three, Four, and Five.

☐  The court makes the following recommendations to the Bureau of Prisons:

X  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at          ☐  a.m.  ☐  p.m.  on               .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on                to

a              , with a certified copy of this judgment.

                                               UNITED STATES MARSHAL

By                                       
                                    DEPUTY UNITED STATES MARSHAL

DEFENDANT: BOROCZK, Darrick C.
CASE NUMBER: 09 CR 647

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     LIFE.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, up to a maximum of 104 tests per year, as directed by the Probation Office.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

X    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐    The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev_09/08 Judgment in a Criminal Case
            Sheet Supervised Release
Case: 12-1022    Document: 22    Filed: 05/17/2012    Judgment Page 57    4    of    10

Case: 09-cr-00647 Document #: 47 Filed: 08/02/11 Page 4 of 10 PageID #:423

DEFENDANT:         BOROCZK, Darrick C.
CASE NUMBER:       09 CR 647

## ADDITIONAL STANDARD CONDITIONS OF SUPERVISION

The defendant shall participate in a mental health and/or sex offender treatment program as directed by the probation officer. The defendant shall comply with all recommended treatment which may include psychological and physiological testing. The defendant shall maintain use of all prescribed medications.

The defendant shall register with the state sex offender registration agency in any state where he/she resides, is employed, carries on a vocation, or is a student, as directed by the probation office.

The defendant shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. The defendant shall consent to the installation of computer monitoring software on all identified computers to which the defendant has access. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. The defendant shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

The costs of the monitoring shall be paid by the defendant at the monthly contractual rate.

The defendant shall not possess or use a computer, camera or any device with access to any "online computer service" at any location (including place of employment) without the prior approval of the probation officer. This includes any Internet service provider, bulletin board system or any other public or private network or email system. The defendant shall not possess camera phones or electronic devices that could be used for covert photography without the prior approval of the probation officer.

The defendant shall not possess or have under his control any pornographic, sexually oriented, or sexually stimulating materials, including visual, auditory, telephonic, or electronic media, computer programs, or services. The defendant shall not patronize any place where such material or entertainment is available. The defendant shall not use any sex-related telephone numbers.

The defendant shall not have contact with any person under the age of 18, except in the presence of a responsible adult who is aware of the nature of his/her background and current offense, and who has been approved by the probation officer and treatment provider.

The defendant's employment shall be restricted to the district and division where he/she resides and/or is supervised, unless approval is granted by the probation officer. Prior to accepting any form of employment, the defendant shall seek the approval of the probation officer, in order to allow the probation officer the opportunity to assess the level of risk to the community the defendant will pose if employed in a particular capacity. The defendant shall not participate in any volunteer activity that may cause the defendant to come into direct contact with children except under circumstances approved in advance by the defendant's probation officer and treatment provider.

The defendant shall provide his supervising probation officer with copies of his/her telephone bills, all credit card statements/receipts, and any other financial information requested.

Defendant shall provide access to any financial information as requested by the probation officer.

A. 4

DEFENDANT:       BOROCZK, Darrick C.
CASE NUMBER:   09 CR 647

# CRIMINAL MONETARY PENALTIES

    The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 500.00 | $ | $ |

☐  The determination of restitution is deferred until     . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **TOTALS** | $ | $ |  |

☐  Restitution amount ordered pursuant to plea agreement  $

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐  the interest requirement is waived for the   ☐  fine   ☐  restitution.

    ☐  the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 09 CR 647 |
| | ) | Judge Ronald Guzman |
| DARRICK C. BOROCZK | ) | |

## PRELIMINARY ORDER OF FORFEITURE

This cause comes before the Court on oral motion of the United States for entry of a preliminary order of forfeiture as to specific property pursuant to the provisions of Title 18, United States Code, Section 2253 and Fed. R. Crim. P. 32.2, and the Court being fully informed finds as follows:

(a)    On August 27, 2009, an indictment was returned charging defendant DARRICK C. BOROCZK with using, persuading, inducing, and enticing a minor under the age of eighteen to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction defendant knew and had reason to know would be transported in interstate commerce, which was actually transported in interstate commerce, and which was produced using materials that had been transported in interstate and foreign commerce, in violation of 18 U.S.C. § 2251(a), among other violations;

(b)    The indictment sought forfeiture to the United States of specific property including, but not limited to, the following items:

(1)    seized personal computers including hard and zip drives;

(2)    seized peripheral connecting cables and equipment;

(3)    seized computer disks, including compact disks, floppy disks, and zip disks;

(4)    seized digital cameras; and

(5)    seized images

pursuant to the provisions of 18 U.S.C. § 2253;

(c)    On March 3, 2010, pursuant to Fed R. Crim. P. 11, defendant DARRICK C.

BOROCZK entered a voluntary plea of guilty to all Counts of the indictment, thereby making the

property named in the indictment subject to forfeiture pursuant to 18 U.S.C. § 2253, which states in

part:

(a)    Property subject to criminal forfeiture.–A person who is convicted of
an offense under this chapter involving a visual depiction described
in section 2251, 2251A, 2252, 2252A, or . . . shall forfeit to the
United States such person's interest in-

(1)    any visual depiction described in section 2251, 2251A, or
2252 of this chapter, or any book, magazine, periodical, film,
videotape, or other matter which contains any such visual
depiction, which was produced, transported, mailed, shipped
or received in violation of this chapter; and

(2)    any property, real or personal, used or intended to be used to
commit or to promote the commission of such offense;

(d)    As a result of his violations of 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B), to which

defendant DARRICK C. BOROCZK plead guilty, certain property is subject to forfeiture to the

United States pursuant to the provisions of 18 U.S.C. § 2253, as property that was used, or intended

to be used, to commit and to promote the commission of the defendant's violations.

(e)    Pursuant to Fed. R. Crim. P. 32.2(b)(2)(B) as amended on December 1, 2009, unless

doing so is impractical, the court must enter the preliminary order of forfeiture sufficiently in

advance of sentencing to allow the parties to suggest revisions or modifications before the order

becomes final as to the defendant at sentencing;

(f)    In accordance with this provision, the United States requests that this Court enter a

A. 7

preliminary order of forfeiture, pursuant to the provisions of 18 U.S.C. § 2253 and Fed. R. Crim. P.

32.2, forfeiting all right, title, and interest defendant DARRICK C. BOROCZK has in the foregoing

property, for disposition according to law;

(g)     The United States requests that the terms and conditions of this preliminary order of

forfeiture entered by this Court be made part of the sentence imposed against defendant DARRICK

C. BOROCZK and included in any judgment and commitment order entered in this case against him.

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1.     That, pursuant to the provisions of 18 U.S.C. § 2253 and Fed. R. Crim. P. 32.2, all

right, title and interest defendant DARRICK C. BOROCZK has in:

(a)     seized personal computers including hard and zip drives;

(b)     seized peripheral connecting cables and equipment;

(c)     seized computer disks, including compact disks, floppy disks, and zip disks;

(d)     seized digital cameras; and

(e)     seized images

is hereby forfeit to the United States of America for disposition according to law;

2.     That, pursuant to the provisions of 21 U.S.C. § 853(g), as incorporated by 18 U.S.C.

§ 2253(b), following entry of this order, the United States Department of Homeland Security shall

seize and take custody of the foregoing property for disposition according to law;

3.     That, pursuant to the provisions of  21 U.S.C. § 853(n)(1), as incorporated by 18

U.S.C. § 2253(b), the United States shall publish notice of this order and of its intent to dispose of

the property according to law.  The government may also, to the extent practicable, pursuant to

statute, provide direct written notice to any person known to have alleged an interest in the property

A. 8

DEFENDANT: BOROCZK, Darrick C.
CASE NUMBER: 09-CR-647-2
Page 9 of 10

Case: 1:09-cr-00647 Document #: 47 Filed: 08/02/11 Page 9 of 10 PageID #:428
Case: 12-1022    Document: 22        Filed: 05/17/2012      Pages: 57

that is the subject of the preliminary order of forfeiture as a substitute for published notice as to those persons so notified. The government is unaware, at this time, of anyone who qualifies for such notice;

4.     That, pursuant to the provisions of 21 U.S.C. § 853(n)(2), as incorporated by 18 U.S.C. § 2253(b), any person other than the defendant, asserts a legal claim in the property which has been ordered forfeit to the United States may, within thirty days of the final publication of notice or this receipt of notice under paragraph three (3), whichever is earlier, and petitions this Court for a hearing to adjudicate the validity of this alleged interest in the property, the government shall request a hearing. The hearing shall be held before the Court alone, without a jury;

5.     Following the Court's disposition of all third party interests, the Court shall, if appropriate, enter a final order of forfeiture as to the property which is the subject of this preliminary order of forfeiture, vesting clear title in the United States of America;

6.     The terms and conditions of this preliminary order of forfeiture are part of the sentence imposed on the defendant DARRICK C. BOROCZK and shall be made part of any judgment and commitment order entered in this case against him;

7.     This Court shall retain jurisdiction over this matter to take any additional action and enter further orders as necessary to implement and enforce this forfeiture order.

_Ronald A. Guzman_
RONALD GUZMAN
United States District Judge

DATED: _____

A. 9

DEFENDANT:        BOROCZK, Darrick C.
CASE NUMBER:      09 CR 647

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☐   Lump sum payment of $ _____ due immediately, balance due

    ☐   not later than _____ , or
    ☐   in accordance        ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
        _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
        _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
        term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
        imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   X   Special instructions regarding the payment of criminal monetary penalties:

        Defendant shall make monthly payments of a minimum of ten percent of his net monthly income as directed by the Probation
        Office.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

X   The defendant shall forfeit the defendant's interest in the following property to the United States:
    see pages 6 through 9

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

A. 10

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | FOR THE NORTHERN DISTRICT OF ILLINOIS |
| 2 | EASTERN DIVISION |

```
 3   UNITED STATES OF AMERICA,        )
                                      )
 4             Plaintiff,             )
                                      )
 5     v.                             )  No. 09 CR 647
                                      )
 6   DARRICK C. BOROCZK,              )  Chicago, Illinois
                                      )  August 2, 2011
 7             Defendant.             )  10:30 a.m.

 8            TRANSCRIPT OF PROCEEDINGS - SENTENCING
              BEFORE THE HONORABLE RONALD A. GUZMAN
 9

10   APPEARANCES:

11   For the Plaintiff:        HON. PATRICK J. FITZGERALD
                               United States Attorney
12                             BY:  MR. JEFFREY D. PERCONTE
                               Assistant United States Attorney
13                             219 South Dearborn Street
                               Suite 500
14                             Chicago, Illinois  60604
                               (312) 353-5300
15
     For the Defendant:        FEDERAL DEFENDER PROGRAM
16                             BY:  MS. HELEN KIM SKINNER
                                    MS. CHRISTINA FARLEY JACKSON
17                             55 East Monroe Street
                               Suite 2800
18                             Chicago, Illinois  60603
                               (312) 621-8300
19
     Also Present:             MR. JACK LOGAN
20

21

22   Court Reporter:           NANCY C. LaBELLA, CSR, RMR, CRR
                               Official Court Reporter
23                             219 South Dearborn Street
                               Room 1222
24                             Chicago, Illinois  60604
                               (312) 435-6890
25                             Nancy_LaBella@ilnd.uscourts.gov
```

A. 11

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 8 of 166 PageID #:261
Case: 12-1022    Document: 22    Filed: 05/17/2012    Pages: 57

8

```
 1              MR. PERCONTE:  We are, Judge.

 2              THE COURT:  Should we take up the issues with respect

 3    to the presentence investigation first?

 4              MR. PERCONTE:  I think that makes sense, your Honor.

 5              THE COURT:  I believe there was essentially one

 6    objection to the PSI; is that correct?

 7              MS. KIM SKINNER:  Judge, I'm sorry.  I did file

 8    objections to the presentence report; and it was based on the

 9    way that the presentence report was written and what factual

10    basis they were using to apply the four-level enhancement.  I

11    did receive the government's sentencing memorandum in which

12    they provide an alternative basis for the enhancement.  And

13    based on their --

14              THE COURT:  You're talking about the possession of

15    depictions of --

16              MS. KIM SKINNER:  Sadistic or masochistic conduct.

17              THE COURT:  Okay.

18              MS. KIM SKINNER:  Based on the government's

19    submission, I am not -- I'm not objecting anymore.

20              THE COURT:  You're going to withdraw the objection?

21              MS. KIM SKINNER:  I'll withdraw it.

22              THE COURT:  Okay.  I take it then that both sides are

23    in agreement with the presentence investigation report's

24    calculation of a total offense level of 43 and a Criminal

25    History Category I; is that correct?
```

1          MR. PERCONTE:  That's correct, Judge.

2          MS. KIM SKINNER:  Yes.

3          THE COURT:  Which means that the guideline sentencing

4    range is life in prison, which is greater than what is

5    available pursuant to the statutes; therefore, the guideline

6    sentencing range defaults to the statute's maximum range.  Is

7    everyone in agreement with that?

8          MS. KIM SKINNER:  We are.

9          MR. PERCONTE:  Yes, Judge.  And that, here, is 130

10   years, I think, when all the maximums are totaled together.

11         MS. KIM SKINNER:  With a minimum of 15.

12         THE COURT:  30-year maximum as to each of Counts One

13   through Four and a ten-year maximum as to Count Five.

14         MR. PERCONTE:  That's correct, Judge.

15         THE COURT:  Okay.  That being said, evidence with

16   respect to sentencing.

17         MS. KIM SKINNER:  We do, Judge.  We would like to

18   call a witness, Dr. Michael Fogel.

19         THE COURT:  You may do so.

20         Sir, why don't you stand right up here.  Remain

21   standing.  Raise your right hand.

22         MICHAEL H. FOGEL, DEFENDANT'S WITNESS, SWORN

23                    DIRECT EXAMINATION

24   BY MS. KIM SKINNER:

25   Q.  Can you please state your name and spell your last name

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 158 of 166 PageID #:411
Case: 12-1022    Document: 22    Filed: 05/17/2012    Pages: 57

158

 1   with.  I did some very monstrous things.  That's -- after I

 2   was brought up to Ozaukee originally, I decided that that's

 3   not what I wanted to be or who I wanted to be; so that's when

 4   I got involved with the counseling and got into the bible

 5   studies and decided to try and -- you know, start trying to

 6   make up for what I did because I don't want to be that person.

 7   I just don't, you know, know how I could ever completely try

 8   and, you know, express my -- how I feel for what I did, you

 9   know. ██████████████████████, but everyone that --

10   involved.  You know, I can't say I won't deserve whatever you

11   give me.  You know, I just would really like another chance in

12   society and to prove that, you know, I'm not that monster that

13   I'm being made out to be.  There's so much more that I would

14   like to do with my life and, you know, even try to help heal

15   the damage that I've done.

16          I think that's about it, your Honor.

17          THE COURT:  Very well.

18          The Court has reviewed the presentence investigation

19   report, the submissions of the parties, the exhibits that have

20   been admitted here today and that have been submitted with the

21   sentencing memorandum.  I take into consideration the

22   testimony that I've heard today; the statements from the

23   victims, both those that were read and those that came from

24   the parties that were involved themselves; the arguments of

25   the attorneys; and all of the facts that have been presented

1    to me in this regard.

2         Let me start, as the appellate court says we must,

3    with the guideline sentencing range.  It's been agreed that

4    the appropriately calculated total offense level in this case

5    is 43, Criminal History Category I, and that results in a

6    guideline sentencing provision of life, which, according to

7    the guidelines, defaults in this case to the maximum sentence

8    in each of Counts One through Four and Five because those

9    counts do not provide for a life sentence.

10        In addition to that, of course, we must consider the

11   3553 factors; among them, the nature, circumstances and

12   seriousness of the offense.  The offense in this case at its

13   essential core consists of taking advantage of innocent and

14   defenseless children repeatedly over a prolonged period of

15   time for the sole purpose of personal sexual gratification.

16   That's it.  ████████████████████████████████████████

17   ██████████████████████████████████████████████████████

18   ████████████████████████████████████         It's conduct that no

19   civilized society can possibly allow no matter what the

20   circumstances.

21        There's no need to attempt to describe the effect on

22   the victims, as that has been done effectively and in

23   excruciating detail by the victim impact statements that have

24   been made part of the record here today.

25        Next, we come to the need for deterrence.  The need

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 160 of 166 PageID #:413
Case: 12-1022     Document: 22     Filed: 05/17/2012     Pages: 57

160

1    for deterrence in a general sense is, as clear as I can make

2    it, what I've just said.  This is conduct that no society, no

3    civilized society can allow if it is to remain a civilized

4    society.  It just simply cannot be.

5          The need for specific deterrence and to protect the

6    public, of course, seem to merge most of the time.  And that

7    has been, I think, the litigation point in this entire

8    sentencing procedure.

9          The defendant has presented testimony by Dr. Fogel.

10   In his opinion, the defendant is a low risk to be a repeat

11   offender.  In this regard, the defendant's specific history

12   is, in part, that he has no prior convictions, arrests or

13   indications of a proclivity for such conduct in his past.

14         The government has presented the testimony of

15   Dr. Rogers, which, in summary, attacks the reliability of

16   Dr. Fogel's opinion and evaluation, arguing that his analysis

17   was not sufficiently comprehensive because it lacked the use

18   of actuarial risk measurements, failed to administer certain

19   psychological tests, contained no diagnostic impressions and

20   relied upon tests which lacked predictability value for sexual

21   offenders.

22         After sifting through all of that testimony, I find

23   that Dr. Fogel's opinion as to the risk of recidivism is just

24   simply not sufficiently reliable.  Not only are some of

25   Dr. Rogers' criticisms valid, but Dr. Fogel's own testimony,

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 161 of 166 PageID #:414
Case: 12-1022    Document: 22        Filed: 05/17/2012    Pages: 57

161

1   specifically that testimony in which he indicated that he felt

2   the determination as to whether the defendant was a pedophile

3   would be irrelevant, was frankly confusing, especially in

4   view, as brought out on cross-examination, of the fact that he

5   had previously testified that because a respondent suffered

6   from pedophilia, he was more likely to commit acts of sexual

7   violence in the future.  I find those two statements

8   irreconcilable.

9         I find the defendant's own statements at the time of

10  his arrest to be most revealing.  It appears to be clear from

11  the way he described his conduct about what he did ███████

12  ███████ that he actually believed he could subject ███

13  ███████ to such conduct without harming them.  His

14  disclaimers that he would never hurt them or did not intend to

15  hurt them or that he stopped if they informed him they were

16  being hurt or did not want him to continue reflect a total

17  lack of comprehension of how any such conduct was inherently

18  and permanently harmful ███████████  And, therein, it

19  appears to me, lies the real risk for the future.

20        Lacking any substantial comprehension of the violent

21  and destructive nature of his conduct███████████

22  ███████ it seems to me, the defendant most likely lacks any

23  real motivation to restrain himself in the future, other, of

24  course, than the motivation that comes from the fear of being

25  caught.  But in that regard, there is no amount of

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 162 of 166 PageID #:415
Case: 12-1022    Document: 22       Filed: 05/17/2012    Pages: 57

162

1    supervision, no number of protective safeguards that can

2    possibly protect other children from this defendant in the

3    future if he himself is not motivated.

4            His conduct in this case, although it was his first

5    offense, was repeated many, many times over a period of years,

6    both ████████████ and with respect to his prolific

7    Internet activities, and leaves us with no doubt that he has

8    an extreme sexual interest, both in child pornography and in

9    actual physical sexual contact with very young children.  And

10   this, it seems to me, makes protection of the public paramount

11   in this case.

12           Based upon the totality of the circumstances before

13   me, the Court intends to enter the following sentence:

14   Pursuant to the Sentencing Reform Act of 1984, it is the

15   judgment of the Court that the defendant is hereby committed

16   to the custody of the Bureau of Prisons to be imprisoned for a

17   term of 180 months on each of Counts One through Four and 120

18   months on Count Five, with all counts to be served

19   consecutively.

20           While incarcerated it is recommended that the

21   defendant participate in the sex offender treatment program.

22           The Court imposes, as it must, a special assessment

23   of $500 but waives any fine, costs of incarceration or

24   supervised release.

25           Upon release from imprisonment, the defendant shall

A. 18

1    be placed on a life term of supervised release on each of

2    Counts One through Five.  Within 72 hours of release, he must

3    report to the probation office.

4            While on supervised release, he shall not commit

5    another federal, state or local crime; shall comply with the

6    standard conditions that have been adopted by this Court and

7    the following additional conditions:  He shall refrain from

8    any unlawful use of a controlled substance; shall submit

9    himself to random drug tests, not to exceed 104 tests per

10   year.  He shall cooperate in the collection of a DNA sample.

11   He shall not possess a firearm or any other destructive

12   device.  He shall participate in a mental health and/or sex

13   offender treatment program as directed by the probation

14   officer, which may include psychological and physiological

15   testing and also prescribed medications.  He shall register

16   with the state sex offender registration agency in any state

17   where he resides.  He shall comply with the requirements of

18   the Computer and Internet Monitoring Program as administered

19   by the United States probation officer.  Costs of monitoring

20   to be paid by the defendant.  The defendant shall not possess

21   or use a computer, camera or any device with access to any

22   online computer service at any location, including any place

23   of employment, without the prior approval of the probation

24   officer.  He shall not possess or have under his control any

25   pornographic, sexually oriented or sexually stimulating

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 164 of 166 PageID #:417
Case: 12-1022    Document: 22      Filed: 05/17/2012    Pages: 57

164

1    materials.  He shall not patronize any place where such

2    material or entertainment is available.  He shall not have

3    contact with any person under the age of 18 except in the

4    presence of a responsible adult who is aware of the nature of

5    his background.  He shall provide the supervising probation

6    officer with copies of his telephone bills, credit card

7    statements, receipts and any other financial information

8    requested.

9            That's the Court's intended sentence.  Are there any

10   questions?

11           MR. PERCONTE:  Not from the government, Judge.

12           MS. KIM SKINNER:  No, Judge.

13           Mr. Boroczk asked whether the Court would recommend

14   Oxford as a placement in the Bureau of Prisons.

15           THE COURT:  I will not.  It's not my custom to make

16   such recommendations unless there's some family crisis or

17   illness in the family or some such situation that would

18   require it.

19           MR. PERCONTE:  Judge, actually I misspoke before.  I

20   think there is a forfeiture issue, and I will send up and give

21   to Ms. Skinner a preliminary order of forfeiture that needs to

22   go with the sentencing judgment.  This was part of his plea.

23   And so -- it's just the computers and everything.  I will send

24   a proposed order up tomorrow after I allow Ms. Skinner to take

25   a look at it.

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 165 of 166 PageID #:418
Case: 12-1022    Document: 22       Filed: 05/17/2012    Pages: 57

165

 1          THE COURT:  Very well.  I take it there are no other

 2   counts; is that correct?

 3          MR. PERCONTE:  No, Judge.  There were five counts.

 4          THE COURT:  And was there a waiver of appellate

 5   rights in the plea agreement?

 6          MS. KIM SKINNER:  No, there wasn't.

 7          MR. PERCONTE:  No.

 8          THE COURT:  Very well.

 9          Sir, it's my duty to advise you that you can appeal

10   your conviction if you believe that your guilty plea was

11   somehow unlawful or involuntary or if there is some other

12   fundamental defect in the proceedings that was not waived by

13   your guilty plea.  You also have a statutory right to appeal

14   your sentence itself under certain circumstances, particularly

15   if you think that the sentence is somehow contrary to the law.

16          You have the right to apply for leave to appeal in

17   forma pauperis, which means without having to pay the usual

18   fee, and the clerk of the court will prepare and file a notice

19   of appeal for you if you request it.

20          With few exceptions, any notice of appeal must be

21   filed within 14 days of the actual entry of the judgment I

22   have announced I intend to enter in this case.

23          Do you have any questions about your right to appeal?

24          THE DEFENDANT:  No, your Honor.

25          THE COURT:  Very well.

A. 21

1              Anything else?

2              MR. PERCONTE:  Not from the government, Judge.

3              MS. KIM SKINNER:  Thank you, your Honor.

4              THE COURT:  Okay.

5                          *    *    *    *    *

6

7    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
8

9
     /s/ Nancy C. LaBella                    October 1, 2011
10   Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25