**In the**
# UNITED STATES COURT OF APPEALS
**for the Seventh Circuit**

## No. 12-1022

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**DARRICK BOROCZK,**

**Defendant-Appellant.**

**On Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 09 CR 647 — Honorable Ronald A. Guzman, *Judge*.**

# BRIEF OF THE UNITED STATES – REDACTED

**GARY S. SHAPIRO**
**Acting United States Attorney**
**for the Northern District of Illinois**
**219 South Dearborn Street**
**Chicago, Illinois 60604**
**(312) 353-5300**

**DEBRA RIGGS BONAMICI**
**Assistant United States Attorney**
**Editor**

**JEFFREY PERCONTE**
**Assistant United States Attorney**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

I.    The District Court Followed Post-*Booker* Sentencing
      Procedures When It Announced Boroczk's Sentence . . . . 33

II.   The Below-Guideline Sentence Imposed by the District
      Court Was Not Substantively Unreasonable . . . . . . . . . . 42

      A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

      B.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

# TABLE OF AUTHORITIES

## CASES

*United States v. Beier*, 490 F.3d 572 (7th Cir. 2007) . . . . . . . . . . . . . . . . 41, 43

*United States v. Busara*, 551 F.3d 669 (7th Cir. 2008) . . . . . . . . . . . . . . . 41

*United States v. Collins*, 640 F.3d 265 (7th Cir. 2011) . . . . . . . . . . . . . . . . 38

*United States v. Curby*, 595 F.3d 794 (7th Cir. 2010) . . . . . . . . . . . . . . . 34, 35

*United States v. Esch*, 832 F.3d 531 (10th Cir. 1987) . . . . . . . . . . . . . . . . . 47

*United States v. Garthus*, 652 F.3d 715 (7th Cir. 2011) . . . . . . . . . . . . . *passim*

*United States v. Gary*, 613 F.3d 706 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . 39

*United States v. Haskins*, 511 F.3d 688 (7th Cir. 2007) . . . . . . . . . . . . . . . 41

*United States v. Holt*, 486 F.3d 997 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . 34

*United States v. Jeffries*, 615 F.3d 909 (8th Cir. 2010) . . . . . . . . . . . . . . 48, 49

*United States v. Johnson*, 471 F.3d 764 (7th Cir. 2006) . . . . . . . . . . . . . . . 41

*United States v. Klug*, 670 F.3d 797 (7th Cir. 2012) . . . . . . . . . . . . . . . 43, 44

*United States v. Laufle*, 433 F.3d 981 (7th Cir. 2006) . . . . . . . . . . . . . . . . 41

*United States v. Lucas*, 670 F.3d 784 (7th Cir. 2012) . . . . . . . . . . . . . . . . . 40

*United States v. Maulding*, 627 F.3d 285 (7th Cir. 2010) . . . . . . . . . . . . . . 43

*United States v. Noel*, 581 F.3d 490 (7th Cir. 2009) . . . . . . . . . . . . . . . *passim*

*United States v. Paige*, 611 F.3d 397 (7th Cir. 2010) . . . . . . . . . . . . . . . . . 34

*United States v. Reibel*, 2012 WL 3156315 (7th Cir. Aug. 6, 2012) . . . . . 41, 43

*United States v. Rodriguez-Alvarez*, 425 F.3d 1041 (7th Cir. 2005) . . . . . . . . 34

*United States v. Russell*, 662 F.3d 831 (7th Cir. 2011) . . . . . . . . . . . 42, 43, 44

*United States v. Shannon*, 518 F.3d 494 (7th Cir. 2008) . . . . . . . . . . . . . . . 34

*United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012) . . . . . . . . . . . . . . . . 42

## STATUTES

18 U.S.C. § 2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 43, 44, 47

18 U.S.C. § 2252A(a)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §3509(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 4248 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

## JURISDICTIONAL STATEMENT

Appellant's jurisdictional statement is complete and correct.

## ISSUES PRESENTED FOR REVIEW

Whether the district court complied with the post-*Booker* sentencing procedures where, in determining the sentence, the court considered written submissions of the parties, the probation officer, and expert reports, as well as expert testimony, victim statements, oral arguments of counsel, and defendant's allocution presented during a daylong sentencing hearing, and explained its reasons for rejecting the defendant's argument that he posed a low risk of recidivism and for choosing the sentence.

Whether the district court's below-Guideline sentence was substantively reasonable, where the defendant repeatedly molested ███████████ for years, produced images and videos that memorialized the molestation of ██ ██████, and sent those images and videos to other individuals over the Internet.

## STATEMENT OF THE CASE[1]

On August 27, 2009, a federal grand jury returned an indictment charging defendant Darrick Boroczk with four counts of manufacturing child pornography, in violation of 18 U.S.C. § 2251(a) (Counts One through Four), and

---

[1] Pursuant to 18 U.S.C. §3509(d), the government has filed (1) a sealed version; and (2) a public, redacted version, of this brief.

one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Five). R. 12.[2] On March 3, 2010, Boroczk pleaded guilty to each of the five counts charged in the indictment. R. 26. Boroczk pleaded guilty without a plea agreement with the government, but did agree to a written factual basis for his plea and submitted a written plea declaration. R. 27, 28.

On July 27, 2011, Boroczk filed objections to the PSR and a separate sentencing memorandum. R. 39, 40. The government filed a sentencing memorandum two days later. R. 41.

The district court held a daylong sentencing hearing on August 2, 2011. R. 46. At the conclusion of the hearing, the district court sentenced Boroczk to serve fifteen years' imprisonment on each of the four manufacturing counts, and ten years' imprisonment on the possession count, with all sentences to run consecutively, for a total sentence of 70 years' imprisonment. R. 47. Boroczk now appeals his sentence.

---

[2] The Original Electronic Record on Appeal is cited as "R.," followed by the district court docket number. The transcript of the change plea hearing, which is R. 45, is cited as "Plea Tr." followed by the page number. The transcript of the sentencing hearing, which is R.46, is cited as "Sent. Tr." followed by the page number. The Presentence Investigation Report is cited as "PSR" followed by the page number. The Government's Version of the Offense, which is attached to the PSR, is cited as "Gov't Ver." followed by the page number.

## STATEMENT OF FACTS

### *Offense Conduct*[3]

Beginning on or before November 10, 2006, and continuing until at least September 18, 2008, Boroczk created approximately 300 still images and multiple videos of ████████████████████,[4] ████████████████,[5] engaged in sexually explicit conduct. PSR at 6. At the time Boroczk created these sexually explicit images and videos, ████████████████████████████████ ████████████████████████████████. *Id.* at 6, 7. The images and videos created by defendant included:

- a digital photo of ████████████████████ engaged in sexually explicit conduct, created on November 10, 2006, when ████████████████████████████████ The image ("IM005911.jpg") shows ██████████ lying naked on her back with her legs spread, with Boroczk's penis pressing against ██████████ vagina. Boroczk sent this image to other individuals via the Internet, and a copy was recovered from a computer in Pennsylvania.

- A digital photo of ████████████████████ engaged in sexually explicit conduct, created on May 2, 2007, when ██████████ ████████████████████████ The image ("IM006108.jpg")

---

[3] This summary of defendant's offense conduct is based on the probation officer's Presentence Report, to which defendant made no objection, as well as on the facts admitted by defendant as part of his guilty plea. *See* PSR; R. 26; Plea Tr. at 15-19, 24.

[4] ████████████████████████████████████████████████ ████████████████████████

[5] ████████████████████████████████████████

shows ███████ lying on her back with her legs spread in a manner that exposes her genitals to the camera, with an open diaper positioned below ███████ buttocks, and holding Boroczk's erect penis in her right hand. Boroczk sent this image to other individuals via the Internet, and a copy of this image was recovered on a computer in Pennsylvania.[6]

- A video of ███████████████ engaged in sexually explicit conduct, created on October 17, 2007, when ███████ ███████████ On multiple occasions during this approximately four and a half-minute video, a naked ███████ is shown on Boroczk's lap with her legs spread in a manner that exposes her vagina to the camera. The video shows Boroczk touching ███████ vagina with his fingers several times. At approximately the 3:42 minute mark of the video, Boroczk spreads ███████ legs and bends them behind her head so that her vagina and anus are exposed to the camera. Finally, the video depicts Boroczk performing oral sex on ███████.

- A video of ████████████ engaged in sexually explicit conduct, created on September 18, 2008, when ███████ ████████████ On multiple occasions during this approximately eight-minute video, Boroczk bends ███████ over his shoulder, exposes ███████ anus and vagina to the camera, and then touches and spreads ███████ vagina and buttocks. At approximately the 5:15 mark of the video, Boroczk lifts ███████ shirt up and begins to fondle and kiss ███████ breasts. Finally, near the end of the video, Boroczk puts his mouth on ███████ genitals.[7]

---

[6] Boroczk took the photos identified as "IM005911.jpg" and "IM006108.jpg" photo using a Hewlett Packard PhotoSmart 315 digital camera, serial number MYB12A3009, which was manufactured in Malaysia.

[7] Boroczk saved the videos created on October 17, 2007 and September 18, 2008, and numerous other images of child pornography, on a Maxtor DiamondMax 10 hard drive which was manufactured in Singapore. Plea Tr. at 15-20; PSR at 6; R. 27 at 1-5.

Plea Tr. at 15-20; PSR at 6; R. 27 at 1-5.

At the time of his arrest on July 30, 2009, Boroczk possessed approximately 300 still images, and multiple videos, depicting ████████ ████ engaged in sexually explicit conduct, saved on his Maxtor DiamondMax 10 hard drive. PSR 6. The images of ████████ included the images described above, as well as images of ████████ vagina and anus after Boroczk had bound her arms and legs with a jump rope. PSR at 7.

Also saved on Boroczk's Maxtor DiamondMax 10 hard drive were a total of approximately 8,452 still images and 186 videos of child pornography. *Id.* Upon examination by the National Center for Missing and Exploited Children, these images and videos were found to include 3,665 still images and 22 videos of previously identified child victims. *Id.*

### *Boroczk's Post-Arrest Statements*

Boroczk was charged by criminal complaint on July 29, 2009, and was arrested the following day. R. 1, 5, 18. After his arrest, Boroczk waived his *Miranda* rights and agreed to speak with law enforcement agents. Gov't Ver. Exs. B and C. At the outset of the interview, Boroczk told the agents that he had never taken any "inappropriate" pictures of ████████. Gov't Ver. Ex. B at 3. However, after he was confronted with the fact that his likeness had been captured in pornographic images of ████████, Boroczk admitted that he had

5

taken pornographic pictures of ███████, though he claimed that he "definitely" took fewer than 100 pictures. *Id.* at 3-4.

When asked what drove him to take pornographic images of ██████ ██████, Boroczk replied, "Curiosity." *Id.* at 5-6. Boroczk further stated that, on occasion, while he was chatting online, a person with whom he was chatting would ask if he had ever taken pornographic pictures of ██████████, and Boroczk sometimes would have ████████ show their chest or buttocks to a webcam so the person with whom he was chatting could see them in real time. *Id.* at 6.

Agents then asked if Boroczk had ever inappropriately touched ██ ████████. *Id.* Boroczk responded, "I'm sure I did, with my hand, topically." *Id.* However, Boroczk denied that he ever touched ████, or that he made ████████ touch or perform sexual acts on each other. *Id.* Further, Boroczk claimed that he never touched ██████████ with his penis, and that his penis was never near ████████. *Id.*

Agents then confronted Boroczk with twenty images of ██████████ recovered from a computer in Pennsylvania. *Id.* Boroczk admitted that he took all of the pictures, and that those images were of ████████████████. *Id.* Those images included images of: (1) ████████ laying on her back with her legs spread while Boroczk's erect penis was pressed against her vagina; (2) █████████

6

laying on an open diaper with her legs spread and Boroczk's erect penis in her right hand; and (3) ███████ laying on his back with his legs spread and ███████ touching his exposed penis and testicles with her hands. (Boroczk stated that he told ███████ to touch ███████ penis, and that ███████ "did not have any problem with it.") *Id.* at 6-10.

Agents then asked Boroczk to describe the manner in which he inappropriately touched ███████. *Id.* at 10. In response, Boroczk said that he had tried to penetrate ███████ vagina and anus with his penis, but "it wouldn't go in" and ███████ said it hurt. *Id.* Instead, Boroczk rubbed the tip of his penis against ███████ vagina and anus, and inserted the tip of his penis into ███████ vagina. *Id.* Further, Boroczk admitted that he had ███████ masturbate him by having her touch his penis with her hand. *Id.* Boroczk also stated that on a few occasions, he ejaculated on ███████ stomach. *Id.* When asked what Boroczk told ███████ while he was touching her, Boroczk replied that he told her that ███████████████████ ███████ *Id.*

Though Boroczk initially denied inappropriately touching ███, he later admitted that he had masturbated ███ because he was "curious to see if a child that young could get an erection." *Id.* In addition, Boroczk admitted that he instructed ███████ to touch ███████ penis and testicles. *Id.* Boroczk also

asked ████ to touch ██████ vagina, but according to Boroczk, ████ "said no.  He didn't care for it.  He just wanted his diaper on."  *Id.*

When asked what sexually attracted him to ████████, Boroczk responded, "Their innocence and purity."  *Id.* at 11.  Boroczk further said that "it was fun" taking pornographic pictures with ██████, that ████████ seemed to have a good time, and that he did not think he was hurting them.  *Id.*  Boroczk further stated that he chatted online with other individuals who were into child pornography almost everyday when he had Internet access at his residence, and that he sent pornographic images and videos of ████████ ████ to those individuals via the Internet.  *Id.* at 12.

### *The Probation Officer's Sentencing Guidelines Calculations*

The United States Probation Office issued the PSR as to Boroczk on June 11, 2010.  The PSR concluded that Boroczk's offense level was 50, which reverted to an offense level of 43 (the maximum offense level in the sentencing table).  PSR at 22.  Based on an offense level of 43 and a criminal history category of I, Boroczk's advisory Guideline range was life imprisonment.  *Id.*

Boroczk subsequently filed an objection to the PSR, in which he argued that his offense level should not have been increased by four-levels pursuant to Guideline § 2G2.1(b)(4) because the offense did not involve "sadistic or masochistic conduct or other depictions of violence."  R. 39.  However, at the

8

sentencing hearing, Boroczk dropped this objection and agreed that the four-level enhancement was appropriate.  Sent. Tr. at 8.

### *Boroczk's Sentencing Memorandum*

Prior to the sentencing hearing, Boroczk filed his "Sentencing Memorandum and Request for Mandatory Minimum Sentence."  R. 40.  In that filing, Boroczk discussed his childhood and the years leading up to the instant offense.  *See id.* at 1-5.  Specifically, Boroczk claimed that he began spending more time on the Internet in 2004.  *Id.* at 5.  Soon thereafter, Boroczk began accessing adult pornography via the Internet.  *Id.*  According to Boroczk, "[t]he availability of high-speed Internet, which allowed him to access volumes of data and images in a short amount of time, resulted in Mr. Boroczk's download of hundreds of adult pornography pictures," and by 2006, he was viewing adult pornography on the Internet on a daily basis.  *Id.*

Boroczk went on to argue that he became addicted to adult pornography and that, as part of that addiction, Boroczk "became more and more desensitized to that which could be viewed as 'mainstream' material.'"  *Id.* at 6-9. According to Boroczk, "other individuals," whom he described as persons "with whom he felt he could develop a friendship," stepped in and "exposed" Boroczk to child pornography.  *Id.* at 9.  Boroczk argued that "[h]e was literally conditioned into

deviancy, and he gradually developed an appetite for child pornography, whether it can be excused or not." *Id.*

After a lengthy argument urging the district court to ignore the child exploitation guidelines, *id.* at 11-16, Boroczk turned to why he believed that a sentence at the fifteen-year mandatory minimum was appropriate. *Id.* at 16-31. First, Boroczk stated that he had been undergoing weekly telephone counseling with a clinical psychologist named Dr. Mickey Morgan, and attached a report from Dr. Morgan regarding that counseling. *Id.* at 16-18, Ex. I (hereinafter cited as "Morgan Rep."). According to Dr. Morgan, Boroczk initially "struggled for awhile in treatment with demonstrating levels of remorse consistent with the severity of his crime." Morgan Rep. at 2. Dr. Morgan claimed that, during their more recent sessions, Boroczk's level of remorse "dramatically improved along with his empathy for both direct and indirect victims." *Id.* at 3. According to Dr. Morgan, Boroczk's clinical prognosis for "successful long-term rehabilitation" was excellent, assuming Boroczk's "continued sincere efforts in treatment." *Id.*

Boroczk then discussed a report issued by psychologist Michael Fogel. R. 40, Ex. J (hereinafter cited as "Fogel Rep."). In his report, Dr. Fogel explained that the instant offense was a result of Boroczk's "addictive pattern of sexually-related behavior," which started with adult pornography, digressed to child pornography, and eventually led to his molestation of ███████████ to

produce child pornography.  Fogel Rep. at 1-16.  According to Dr. Fogel, the "totality of data suggests that [Boroczk's] risk to commit a future hands-on sexual offense is low." Fogel Rep. at 21.  Dr. Fogel reasoned that Boroczk "[p]resented with few static, or unchangeable, risk factors that have been shown to be associated with sexual recidivism," such as "prior criminal history, prior sexual offending, resistance to rules and supervision, employment instability, having never been married, and ███████████████████████." Fogel Rep. at 20.

Dr. Fogel did recognize that Boroczk presented "several risk factors," such as "sexual preoccupation, deviant sexual interest, offense-supportive attitudes, and intimacy deficits," but ultimately concluded that "these factors [did] not exacerbate his risk such that he presents a high risk to commit a future hands-on sexual offense." *Id.* at 21.  However, Dr. Fogel discounted these risk factors based on two grounds: (1) research showing that ██████████ offenders recidivate at a lower rate than ██████████████ offenders; and (2) the fact that Boroczk will be on an "extended period of supervised release that will follow his term of confinement." *Id.*  Dr. Fogel further reasoned that neither Boroczk's history nor psychological testing suggested that Boroczk had a mental illness. *Id.*  However, Dr. Fogel did admit in his report that "a potential limitation with

his findings is that they are largely (and inevitably) based on Mr. Boroczk's self-report." *Id.* at 16.

Boroczk concluded his sentencing memorandum with an argument that a longer sentence would "not meet any sentencing goal more effectively than would a shorter prison sentence." *Id.* at 25. Boroczk reasoned that there is no evidence suggesting that longer sentences deter crime, and that his likelihood of recidivism would decrease as his age increased. *Id.* at 25-26. Boroczk further argued that supervision and treatment are the "two best ways to ensure that an individual will not recidivate," and that a sentence in excess of fifteen years would work against "efficient treatment" and recovery because treatment programs measure progress while the "individual is in the community." *Id.* at 26-27. ███████████████████████████████████ Boroczk asserted that a fifteen year sentence would satisfy the 18 U.S.C. § 3553(a) factors.

### *The Government's Sentencing Memorandum*

In its sentencing memorandum filed on July 29, 2011, the government argued that the § 3553(a) factors favored a sentence within the advisory Guidelines range (capped by the applicable statutory maximum of 130 years' imprisonment). R. 41. The government's § 3553(a) argument began with a discussion of the nature, circumstances, and seriousness of Boroczk's offense, as

well as the need for just punishment. *Id.* at 14-18. Specifically, the government

argued that ████████████████████████████████████████████

████████████████████████████████████████ *Id.* at

14. Further, the government pointed out that Boroczk shot approximately 300

photographs and multiple videos of his exploitation of ████████████ and sent

those photographs and videos to other individuals via the Internet. *Id.* The

government argued that, by introducing those images into the Internet's child

pornography distribution network, Boroczk has ensured that ████████████

████████ will be forced to relive the sexual abuse ████████████████████

████ for the rest of their lives, because other people who, like Boroczk, are

sexually aroused by the sexual exploitation of innocent children, will have access

to those images and videos forever. *Id.* at 14-15.

The government also argued that ████████████████ were not his only

victims, and that Boroczk's victims included the children who were raped and

exploited to create the approximately 8,450 images and 186 videos of child

pornography which Boroczk possessed and used for his sexual gratification. *Id.*

at 15. The government also included victim-impact statements from some of

the identified victims depicted in Boroczk's enormous child pornography

collection. *See id.* at 16-17, Ex A. Based on his contribution to the victimization

of countless children, his hands-on molestation of ████████████████ for

years, and his distribution of images and videos that permanently memorialized

his sexual abuse of ██████████, the government argued that the nature

and circumstances of Boroczk's offense, and the need for just punishment for

that offense, warranted a within-Guidelines sentence of 130 years'

imprisonment. *Id.* at 17.

The government asserted that Boroczk's history and characteristics also

favored a within-Guidelines sentence. *Id.* at 17-18. The government pointed out

that, during the three years in which Boroczk molested ███████████

███████████████████████████████████

██████████████████. *Id.* Further, the government noted that

Boroczk reveled in his role as a self-proclaimed "kingpin" among child

pornography collectors on the Internet. *Id.* at 18.

In addition, the government argued that a within-Guidelines sentence

would serve the purpose of deterring Boroczk from committing additional

offenses through incapacitation. *Id.* The government further asserted that such

a sentence would deter other would-be offenders from engaging in similar

conduct. *Id.* at 18.

The government also argued that the "need to protect the public" favored

a within-Guidelines sentence. *Id.* at 18-22. Quoting this Court, the government

asserted that "[s]tatistical analysis of sex crimes has shown that the best

14

predictor of recidivism is not deportment at an interview but sexual interest in children." *Id.* (quoting *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011)). The government argued that Boroczk's offense conduct demonstrated that he has an extreme sexual interest in children. *Id.* at 19. The government also noted that Dr. Fogel—Boroczk's own expert— acknowledged that Boroczk had a "sexual preoccupation" and "deviant sexual interest" in children. *Id.* The government further argued that Boroczk's obvious sexual interest in children, combined with the fact that he has committed both child pornography and hands-on sex crimes demonstrated that he posed a substantial risk of recidivism, and that the public needed to be protected from him. *Id.*

The government then turned its attention to the reports of Drs. Morgan and Fogel. *Id.* The government pointed out that Dr. Fogel specifically mentioned that there was "a potential limitation associated" with his findings because those findings were based on Boroczk's self-report. *Id.* Moreover, Dr. Morgan did not perform any psychological testing on Boroczk. *Id.* The government argued that neither Dr. Fogel nor Dr. Morgan should have been so willing to take Boroczk at his word in light of the fact that Boroczk repeatedly lied to agents about his sexual contact with ███████ during his post-arrest statement, and the fact that Boroczk was clever enough ██████████ ██████████████████████████. *Id.*

15

The government also criticized the methods (or lack thereof) employed by Drs. Fogel and Morgan, and attached a letter from psychologist Dr. Tracy L. Rogers in support of that criticism.  *Id.*  The government noted that in their reports, neither Dr. Fogel nor Dr. Morgan used any of the available objective risk assessment tools that assist in measuring the likelihood of recidivism in sex offender cases.  *Id.* at 20, Rogers Rep. at 1.  Further, Dr. Rogers criticized Dr. Fogel's failure to formally assess Boroczk's deviant sexual interest in children. Rogers Rep. at 2.  According to Dr. Rogers, "[t]he single strongest predictor of sexual recidivism is sexual interest in children measured by phallometric assessment" through the Penile Plethysmograph ("PPG") test (a test that Dr. Fogel did not perform).  *Id.*  Further, Dr. Rogers criticized Dr. Fogel's failure to offer an opinion as to whether Boroczk is a pedophile.  *Id.*  According to Dr. Rogers, "[i]ndividuals who suffer from Pedophilia are at increased risk for sexual recidivism."  *Id.*  Dr. Rogers further explained that "sexual interest in children, a marker for DSM-IV pedophilia, correlate[s] strongly with sexual recidivism." *Id.*

In its final criticism of the reports issued by Dr. Fogel and Dr. Morgan, the government pointed out that both Dr. Fogel and Dr. Morgan failed to opine on whether Boroczk would commit another child pornography offense in the future. R. 41 at 21.  The government argued that the failure of Dr. Morgan and Dr.

16

Fogel to explicitly address whether Boroczk posed the risk of committing future child pornography offenses completely undermined their opinions because they both claimed that it was Boroczk's addiction to child pornography, and the 'friends' he made through that addiction, that directly led to his molestation of ███████████. *Id.* The government also noted the "addiction to child pornography" argument espoused by Boroczk, Dr. Fogel, and Dr. Morgan was actually a kind of diminished capacity claim (specifically, that Boroczk's addiction diminished his capacity to realize that molesting ███████████ and trading child pornography was wrong), and therefore was an aggravating factor that made Boroczk more likely to recidivate. *Id.* at 20-21 (quoting *Garthus*, 652 F.3d at 717).

At the conclusion of its sentencing memorandum, the government requested that the district court sentence Boroczk to the advisory sentence prescribed by the Sentencing Guidelines—130 years' imprisonment.

17

*Sentencing Hearing*

The district court held Boroczk's sentencing hearing on August 2, 2011.

Sent. Tr. at 1.  At the outset of the hearing, the government and Boroczk agreed

to the content of a video and image that the government intended to introduce

during the sentencing hearing.  *Id.* at 2-5.  The government then explained the

content of the four-minute video it intended to play to the district court:

> [T]he video depicts Mr. Boroczk manipulating ███████████ in front
> of a web cam and an image that was later distributed. ███████████
> ███████████████████████████████████████████████████████████
> ███ He positions her several different times in front of the camera
> and then at the end of the video bends her legs back and performs
> oral sex on her, all the while you see her trying to reach forward
> and he is batting her arm down.

*Id.* at 2.  The government then explained the image it intended to introduce at

the hearing:

> [I]t's an image of ███████████████████ in a chair with her legs
> kind of bent back . . . .  Her legs are bent back like underneath the
> arms of the chair.  She's naked and she's crying.  And one of the
> things the defendant says . . . he never really hurt ███████████ or he
> didn't think he was hurting them.  I think the image undermines
> that.

*Id.* at 4.  The district court then asked whether Boroczk's counsel disagreed with

the content of the image and video described by the government, and Boroczk's

counsel indicated that there was no disagreement.  *Id.* at 5.

The district court then addressed the advisory Guidelines range. *Id.* at 8. After the district court confirmed that neither party objected to the offense level calculations and criminal history scoring in the PSR, the district court found that Boroczk's offense level was 43 and that his criminal history category was I. *Id.* The district court further explained that the advisory Guidelines range was life imprisonment, which defaulted to the statutory maximum term of 130 years' imprisonment because life imprisonment exceeded the statutory maximum. *Id.* at 9.

After the district court calculated the advisory Guidelines range, Boroczk called Dr. Fogel as a witness. *Id.* On direct examination, Dr. Fogel essentially offered the conclusions contained in his report. Specifically, Dr. Fogel testified that Boroczk "present[ed] a low risk to sexually re-offend or to commit a hands-on sexual offense." *Id.* at 29. When asked to explain the basis for that conclusion, Dr. Fogel first provided three reasons why Boroczk's case was "complex." *Id.* at 29. Dr. Fogel acknowledged that, as an initial matter, "the literature is in its infancy . . . with regard to child pornography offenders" and recidivism. *Id.* Dr. Fogel further acknowledged "there isn't . . . a study that looks specifically at individuals who have produced child pornography." *Id.* In addition, Boroczk's case involved ███, which Dr. Fogel viewed as an additional "complication." *Id.* at 29-30.

Dr. Fogel then asserted that the rate of recidivism was lower for ███████ than for ███████████████. *Id.* at 30. Dr. Fogel further stated that individuals who "did recidivate tended to have histories of criminality." *Id.* at 31. Moreover, Dr. Fogel said that other factors such as employment instability, ████████████, prior sex offenses, and age all affected the risk of recidivism. *Id.* Dr. Fogel testified that, in this case, those factors did not indicate that Boroczk presented a risk of recidivism. *Id.*

Dr. Fogel also stated that Boroczk did possess "dynamic risk factors" which indicated that he in fact did pose a risk of recidivism. *Id.* Specifically, Dr. Fogel testified that "those factors speak to the sexual deviance that he [Boroczk] has admitted to experiencing with regard to viewing the child pornography, as well as engaging in the sexual conduct that he did ███████████." *Id.* However, Dr. Fogel downplayed Boroczk's "dynamic risk factors," such as a sexually deviant interest and preoccupation with children, on the basis that those risk factors are "changeable" and "amenable to treatment." *Id.* Based on his review of Dr. Morgan's report and a conversation with Dr. Morgan, Dr. Fogel concluded that Boroczk was amenable to treatment, and thus posed a low risk of recidivism, despite the presence of these "dynamic risk factors." *Id.* at 35-36.

Dr. Fogel then offered an opinion as to whether Boroczk was likely to commit a child pornography offense in the future—an opinion that was not

20

contained in his report. *Id.* at 36-37. Dr. Fogel opined that Boroczk was a "low risk to seek out to obtain child pornography in the future." *Id.* at 38. Dr. Fogel reasoned that Boroczk will be on supervised release for a significant period of time after he is released, and opined that the court would be able to prevent Boroczk from committing another child pornography offense through extensive monitoring of Boroczk's behavior. *Id.* Dr. Fogel also pointed to the progress Boroczk had made in treatment with Dr. Morgan, as well as the availability of treatment in the Bureau of Prisons. *Id.*

Dr. Fogel then took up the criticism of his methodology levied by Dr. Rogers. *Id.* at 39-53. First, Dr. Fogel responded to the criticism that he did not use any actuarial risk assessment tools as part of his assessment of Boroczk. *Id.* at 39-46. Dr. Fogel explained that he did not perform any of those actuarial risk assessment tests before he issued his report because he did not believe Boroczk, ██████████████████, shared the characteristics of the statistical group upon which the test was based. *Id.* at 41-44. However, after Dr. Fogel reviewed Dr. Rogers' criticism of his methodology, Dr. Fogel did perform three of the actuarial assessment tools for Boroczk (all of which he said reflected a "low" or "moderately low" risk of recidivism). *Id.* at 45-46.

Dr. Fogel then responded to Dr. Rogers' criticism regarding Dr. Fogel's failure to formally assess Boroczk's deviant sexual interest using the PPG. *Id.*

at 48.  Dr. Fogel claimed that administering the PPG to Boroczk would not be beneficial because Boroczk "admitted . . . that he was aroused to the child pornography.  He was aroused to ████████ . . . ."  *Id.* at 49.  Further, Dr. Fogel claimed that there have been studies that have found that the PPG "is unable to differentiate between ████████████████████ ████████" *Id.*

Finally, Dr. Fogel responded to Dr. Rogers' criticism of Dr. Fogel's failure to offer an opinion regarding whether Boroczk met the criteria for pedophilia. *Id.* at 52-53.  Dr. Fogel testified that he did not include a diagnosis of pedophilia in his report because he "didn't think it was relevant." *Id.* at 52.  Dr. Fogel further testified that even if Boroczk met the definition for pedophilia in the DSM-IV-TR, that fact would not change his opinion that Boroczk was a low risk to commit a hands-on offense or child pornography offense in the future. *Id.* at 54.

Dr. Fogel was then tendered for cross-examination. *Id.*  On cross-examination, Dr. Fogel admitted that Boroczk met each of the DSM-IV-TR criteria for pedophilia:

> (1) over a period of at least six months, the person experienced "recurrent intense sexual fantasies, sexual urges or behaviors involving sexual activity with a prepubescent child or children generally age 13 or younger;"

(2) the person "acted on these sexual urges or the sexual urges or fantasies" which "caused marked distress or interpersonal difficulty;" and

(3) the person is at least sixteen years old and at least five years older than the child or children involved in the first criterion.

*Id.* at 59-60.

Dr. Fogel further admitted that pedophilia is "chronic," meaning that "it doesn't go away." *Id.* at 60.

Dr. Fogel next acknowledged his own testimony on direct examination that a diagnosis of pedophilia is not relevant when assessing the risk that a person may commit a hands-on offense against children in the future, and then admitted that, actually, the fact that Boroczk was a pedophile made Boroczk more likely than a non-pedophile to commit a sexual offense against children in the future. *Id.* at 60-61.

The government then asked Dr. Fogel whether he recalled James Vance. *Id.* After Dr. Fogel said that he did not, the government refreshed Dr. Fogel's recollection by showing him an Illinois appellate decision for the case *In re: The commitment of James Vance. Id.* at 61-63. After Dr. Fogel reviewed the opinion, he was able to recall and answer questions about the Vance case. *Id.* at 63-65. Specifically, Dr. Fogel admitted that in the Vance case, he testified that Vance was a pedophile in support of his conclusion that Vance was likely to commit

23

sexual offenses against children in the future. *Id.* at 64. Dr. Fogel further admitted that he found that Vance posed a high risk of committing future sex offenses against children even though an actuarial assessment of Vance indicated that Vance posed a low risk of recidivism. *Id.*

In addition, Dr. Fogel admitted (consistent with his report) that a limitation associated with his findings "is that they are largely and inevitably based on Mr. Boroczk's self-report." *Id.* at 68. Moreover, Dr. Fogel acknowledged that his report did not address the fact that one of Boroczk's victims was male even though male victims is a factor that normally makes recidivism more likely. *Id.* at 76-77.

Dr. Fogel was excused from the witness stand after a short redirect. *Id.* at 99. Boroczk did not call Dr. Morgan as a witness at the sentencing hearing. *Id.*

After Dr. Fogel finished testifying, the government called Dr. Rogers. *Id.* Dr. Rogers testified that she has a doctorate in clinical psychology, and that her practice included conducting forensic risk assessment evaluations for sex offenders as well as clinical treatment and therapy. *Id.* at 100-04. Dr. Rogers explained that she was asked to opine on the validity of the risk assessment evaluation of Boroczk performed by Dr. Fogel. *Id.* Dr. Rogers testified that she did not find Dr. Fogel's opinion to be valid because it was not the result of a

24

comprehensive evaluation. *Id.* Specifically, Dr. Rogers testified that she was "struck by the lack of use of actuarial risk measures; the fact that the PPG wasn't administered, that there wasn't any diagnostic impressions, and that only the [Minnesota Multiphasic Personality Inventory ("MMPI")] and [Personality Assessment Inventory ("PAI")] were administered. And they [meaning the MMPI and PAI] don't – they're not known to have any predictive validity for offenses, sexual or otherwise." *Id.*

Dr. Rogers further testified that deviant sexual interest in children is the strongest predictor of future sexual offending against children, and that the PPG is the "gold standard" of assessments used to gauge deviant sexual interest. *Id.* at 111. Dr. Rogers acknowledged that she heard Dr. Fogel's testimony regarding why he did not more formally assess Boroczk's deviant sexual interests (namely, because Boroczk admitted that he was sexually attracted to children). *Id.* But Dr. Rogers testified that employing the PPG is still beneficial in such a circumstances because it does not rely solely on self-report. *Id.* at 112. Dr. Rogers noted that, whereas Boroczk stated that he was not attracted to male children, the PPG would have determined whether Boroczk was in fact attracted to males, which is a risk factor for recidivism (attraction to males increases the risk of recidivism). *Id.*

25

Dr. Rogers also testified regarding Dr. Fogel's failure in his report to make any sort of diagnosis of Boroczk, including a diagnosis of pedophilia. *Id.* Dr. Rogers stated that "in terms of pedophilia . . . it's a chronic disorder. It's a major mental disorder." *Id.* at 112. Dr. Rogers further testified, "[P]edophiles are at increased risk to recidivate. Like I said, it's a chronic disorder. And it's important – and it's not just about it being a label. It – It's about someone's behavior and that they are likely to exhibit this behavior in the long term." *Id.* at 113.

On cross-examination, Dr. Rogers testified that not every single pedophile poses an increase risk for sexual recidivism, and that most sex offenders do not recidivate. *Id.* at 118. Dr. Rogers also stated that the strongest predictors of sexual recidivism are related to deviancy and antisocial behaviors and attitudes, and testified that Boroczk admitted that he engaged in sexually deviant behavior. *Id.* Dr. Rogers also acknowledged that Dr. Fogel performed actuarial risk assessments of Boroczk after issuing his report, and that those risk assessments indicated that Boroczk posed a low to moderate risk of re-offending. *Id.* at 119-20.

After the conclusion of Dr. Rogers' testimony, the district court heard from the victims ███████████████████. *Id.* at 121-135. Specifically, the district court heard a statement written by ███████, as well as a statement written

26

by ███████████████████████████████████ *Id.* at 121-22.
The district court also heard statements from a cousin of the victims' mother
and a family friend. *Id.* at 123-25.

The district court then heard from Candace Boroczk, ███████████
███████████████████████████████████. During her statement,
Candace explained to the district court ███████████████████████
████████████████████████████████████████████████.

*Id.* at 126-27. She stated:



*Id.* at 127.

The district court next heard from Colleen Cardoza, ███████████
██████████████████████████. *Id.* at 128-35. Ms. Cardoza' statement
provided a detailed account of ████████████████████████████
███████████████████████████████████████████████████
██ ██ ████████████████████████████████████████████
███████████████████████████████████████████████████



*Id.* at 131-32.  Ms. Cardoza also informed the district court, ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ ██ █████████████████████████

████████████████████████████████████████████████████

███████████████████████ ██ ██████

     After hearing from the victims, the district court then listened to extensive § 3553(a) arguments from both parties, much of which tracked the arguments contained in the parties' sentencing memoranda.  *Id.* at 135-57.  The district court then gave Boroczk the opportunity to make a statement.  *Id.* at 157-58.

After Boroczk finished his statement, the district court announced Boroczk's sentence. *Id.* at 158-162. The district court began by explaining that it had reviewed the PSR, the parties' sentencing memoranda and exhibits and reports attached to those memoranda, the exhibits submitted at the sentencing hearing, the testimony during the sentencing hearing, the victim statements, and the arguments made by the attorneys during the hearing. *Id.* at 158-59. The district court then set forth the agreed Guideline calculations and advisory Guideline range of life imprisonment (which defaulted to the statutory maximum). *Id.* at 159.

The district court then went through its consideration of the § 3553(a) factors, starting with the nature, circumstances, and seriousness of the offense. The district court stated:

> The offense in this case at its essential core consists of taking advantage of innocent and defenseless children repeatedly over a prolonged period of time for the sole purpose of personal sexual gratification. That's it. ████████████████████████████████ ████████████████████████████████ ████████████████ It's conduct that no civilized society can possibly allow no matter what the circumstances.

*Id.* at 159. The district court further stated, "There's no need to attempt to describe the effect on the victims, as that has been done effectively and in excruciating detail by the victim impact statements that have been made part of the record here today." *Id.*

29

The district court then turned to general deterrence. *Id.* at 159-60. The district court stated that the need for general deterrence was "clear," as this type of behavior could not be tolerated by any civil society. *Id.*

The district court next discussed specific deterrence and the need to protect the public, which the court characterized as the primary focus of the evidence presented at the sentencing hearing. *Id.* at 160. The district count began by summarizing the opinions of Dr. Fogel and Dr. Rogers. *Id.* at 160. The district court then stated:

> After sifting through all of that testimony, I find that Dr. Fogel's opinion as to the risk of recidivism is just simply not sufficiently credible. Not only are some of Dr. Rogers' criticisms valid, but Dr. Fogel's own testimony, specifically that testimony in which he indicated that he felt the determination as to whether the defendant was a pedophile would be irrelevant, was frankly confusing, especially in view, as brought out on cross-examination, of the fact that he had previously testified that because a respondent suffered from pedophilia, he was more likely to commit acts of sexual violence in the future. I find those two statements irreconcilable.

*Id.* at 161.

The district court also expressed concern about Boroczk's statements at the time of his arrest in which Boroczk indicated that he "believed he could subject ███████ to such conduct without harming them." *Id.* at 161. The district court further explained that "[l]acking any substantial comprehension of the violent and destructive nature of his conduct towards ███████,

30

it seems to me, [Boroczk] most likely lacks any real motivation to restrain himself in the future, other, of course, than the motivation that comes from the fear of getting caught." *Id.* at 161. Finally, the district explained:

> [Boroczk's] conduct in this case, although it was his first offense, was repeated many, many times over a period of years, both as to ████████ and with respect to his prolific Internet activities, leaves us with no doubt that he has an extreme sexual interest, both in child pornography and in actual physical sexual contact with very young children. And this, it seems to me, makes protection of the public paramount in this case.

*Id.* at 162.

Then, based on the totality of the circumstances before it, the district court sentenced Boroczk to fifteen years' imprisonment on each of Counts One through Four (which charged manufacturing of child pornography), and ten years' imprisonment on Count Five (which charged possession of child pornography), with all sentences to run consecutively, for a total of 70 years' imprisonment. *Id.*

## SUMMARY OF THE ARGUMENT

The Court should affirm the sentence imposed by the district court. The district court complied with post-*Booker* sentencing procedures when it correctly calculated the advisory Guideline range and considered the factors under 18 U.S.C. § 3553(a) prior to announcing Boroczk's sentence. The district court provided each of the parties with an extensive opportunity to introduce evidence and argument with respect to the relevant § 3553(a) factors, and noted that it considered the parties' sentencing memoranda, exhibits attached to the sentencing memoranda (which included reports submitted by multiple psychologists), testimony from two experts and exhibits presented during the daylong sentencing hearing, statements from the victims, and Boroczk's allocution before it imposed sentence. Moreover, the district court referenced specific § 3553(a) factors when it imposed Boroczk's sentence, including the nature, circumstances, and seriousness of the offense, the need for general and specific deterrence, and the need to protect the public. Finally, the district court addressed and rejected Boroczk's primary argument in support of his request for a more lenient sentence, namely, that he did not pose a substantial risk of recidivism. The district court's rejection of that argument was supported by evidence showing that Boroczk has a chronic sexual interest in children.

The district court's sentence was also substantively reasonable.  The sentence imposed by the district court was presumptively reasonable because it was below the advisory Guideline sentence of 130 years' imprisonment, and Boroczk has failed to rebut the presumption of reasonableness.  The sentence properly takes into account the abhorrent nature of Boroczk's offense conduct, which included the repeated sexual abuse over the course of multiple years of ███████████████████████████████████████████████████, the creation and distribution over the Internet of approximately 300 images and multiple videos memorializing that abuse, and Boroczk's possession of approximately 8,450 images and 186 videos of child pornography.  Finally, the sentence is consistent with other sentences affirmed by this Court in production of child pornography cases.

## ARGUMENT

### I.    The District Court Followed Post-*Booker* Sentencing Procedures When It Announced Boroczk's Sentence.

The district court complied with post-*Booker* sentencing procedures when it correctly calculated Boroczk's advisory Guideline range and considered the sentencing factors under 18 U.S.C. § 3553(a), and imposed a sentence below the advisory Guidelines range.  This Court has instructed that a district court must undertake a two-part sentencing procedure: (1) correctly calculate the

sentencing range under the Guidelines; and (2) "consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to arrive at a reasonable sentence." *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007). To comply with the second part of this procedure, a district court must provide the parties "an opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence." *Id.* (citation omitted). In announcing the sentence, "the court need not address every § 3553(a) factor in checklist fashion, explicitly articulating its conclusions regarding each one." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). Instead, "sentencing judges must only demonstrate meaningful consideration of § 3553(a) factors." *United States v. Paige*, 611 F.3d 397, 398 (7th Cir. 2010). As part of its consideration of the § 3553(a) factors, the district court must address arguments made by the defendant in support of a request for leniency. *See*, *e.g.*, *United States v. Curby*, 595 F.3d 794, 796 (7th Cir. 2010). This Court reviews *de novo* whether a district court complied with the required procedural steps at sentencing. *United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1046 (7th Cir. 2005).

Here, the district court followed post-*Booker* sentencing procedures. As Boroczk concedes, the district court correctly calculated the advisory Guideline range. *See* Sent. Tr. at 158-59. Moreover, the district court presided over a

daylong sentencing hearing, during which it heard testimony from Dr. Fogel and Dr. Rogers, statements from the victims and their families, argument from counsel regarding the § 3553(a) factors, and Boroczk's allocution. *See* Sent. Tr. The district court then noted each of the materials it considered before imposing Boroczk's sentence, including the § 3553(a) factors. *Id.* at 158-59. As it announced Boroczk's sentence, the district court specifically referenced particular § 3553(a) factors, including the nature, circumstances, and seriousness of the offense, the need for general and specific deterrence, and the need to protect the public. *Id.* at 159-62.

In addition, the district court specifically considered Boroczk's argument that he did not present a risk of recidivism, and explained why it rejected that argument and believed that the testimony of Dr. Fogel, the expert who Boroczk called at the sentencing hearing to support his risk of recidivism argument, was not credible. *Id.* at 160-61; *see Curby*, 595 F.3d at 796 (district court followed post-*Booker* sentencing procedures when it acknowledged that it had considered the mitigating circumstances set forth in a psychologists report submitted by the defendant). Thus, the district court complied with the post-*Booker* procedural requirements when it imposed Boroczk's sentence.

In support of his claim that the district court failed to follow proper sentencing procedure, Br. at 15-20, Boroczk relies on mischaracterizations of the

district court's rationale and conclusions. As an initial matter, the district court did not, as Boroczk contends, Br. at 15, conclude "that Mr. Boroczk for the rest of his life would be certain to commit another hands-on offense." Instead, the district court found that Boroczk's "extreme sexual interest" in children posed a serious risk of recidivism, and determined that the public required protection from that risk. Sent. Tr. at 161-62. In light of Borock's post-arrest statement, in which he said he believed he could subject ███████ to repeated acts of sexual abuse without harming them, the district court doubted Boroczk's motivation and ability to restrain himself from such conduct in the future. After hearing the opposing testimony of two experts, and hearing from the defendant himself, the district court did not believe that Boroczk had "any real motivation to restrain himself in the future, other, of course, than the motivation that comes from the fear of being caught," and noted that "no amount of supervision, [and] no number of protective safeguards" could protect children from the future risk Boroczk presented "if he himself is not motivated." *Id.* at 161-62. Thus, while the district court concluded that Boroczk posed a risk of re-offending against children in the future, it did not conclude that Boroczk certainly would re-offend.

Boroczk argues, Br. at 17, that the district court focused solely on the nature of Boroczk's offense—that is, the repeated molestation ███████

36

█████ for a period of years—and ignored other factors.  This argument ignores what the district court actually said at sentencing.  The district court did note that Boroczk had repeatedly molested ███████ and viewed child pornography for a period of years, *id.* at 162, but its analysis did not stop there.  The district court explained that Boroczk's conduct left "no doubt that [Boroczk] has an extreme sexual interest in children, both in child pornography and in actual physical contact with very young children," and reasonably determined that Boroczk's interest made "the protection of the public paramount in this case." *Id.*

There was ample support in the record for the district court's conclusion that Boroczk's sexual interest in children posed a serious risk of recidivism. Boroczk's own expert, Dr. Fogel, testified that Boroczk was a pedophile with a strong sexual interest in children.  Fogel  Rep. at 20-21; Sent. Tr. at 48-50; 59-60.  Indeed, Dr. Fogel agreed that Boroczk's pedophilia—which is a deviant sexual interest in children—was "chronic," meaning that it would not go away. *Id.* at 59-60. The government's expert, Dr. Rogers, testified that "pedophiles are at increased risk to recidivate," and that pedophilia is a "chronic disorder."  *Id.* at 113.  Moreover, the government noted that this Court had found that "[s]tatistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children."

37

*Garthus*, 652 F.3d at 720; *see* Dkt. 41 at 18. In sum, there was more than a sufficient basis in the record for the district court to conclude that Boroczk's chronic sexual interest in children presented a serious risk of recidivism, despite other factors.

Boroczk argues that the district court ignored a study cited in Dr. Fogel's report and testimony, and discussed by Boroczk's counsel in his pre-sentencing submission and during oral argument, which indicated that ███████████ are less likely than ████████████ to re-offend. Br. at 16. Fogel Rep. at 21; Sent. Tr. at 30; 151. The district court stated on the record that it had considered the presentence investigation report, the submissions of the parties, the exhibits submitted with the sentencing memoranda and admitted during the hearing, as well as the testimony, victim statements, and arguments presented at the hearing in determining the sentence. See Sent. Tr. 158-59. The court's failure to specifically mention the cited study in no way indicates that the court "ignored" it. *Id.* at 158. *See, generally, United States v. Collins*, 640 F.3d 265, 270 (7th Cir. 2011) (a "district judge is not required to make factual findings as to each of the [3553(a)] factors").

The district court's comments regarding the risks posed by Boroczk's undisputed, chronic sexual interest in children make clear that the district court found Boroczk's undisputed sexual interest in children more compelling than a

38

study regarding the recidivism of ███████████ in general.  *See United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010) (a district court need not be more explicit where "anyone acquainted with the facts would have known without being told why the judge had not accepted the argument") (citations omitted). Thus, the district court's failure to specifically reference one study cited by Boroczk did not render the district court's consideration of the § 3553(a) factors procedurally defective.

Boroczk finds fault with the district court's reliance on Boroczk's post-arrest statements which the court believed indicated that Boroczk lacked "any substantial comprehension of the violent and destructive nature of his conduct towards ███████████." Br. 17-19.  Boroczk argues that the record reflects that the district court "ignored" evidence, namely Dr. Morgan's report, demonstrating that Boroczk's "warped views" had been "straightened out." *Id.* Notably, although Boroczk places much weight here on Dr. Morgan's reports, he did not call Dr. Morgan as a witness at the sentencing hearing.[8]  In any event, rather than ignoring evidence of remorse and motivation to change, the district court determined that Boroczk's "own statements at the time of his arrest [were]

---

[8] Dr. Fogel discussed Dr. Morgan's reports and how they informed Dr. Fogel's opinion that Boroczk posed a low risk of re-offending. Sent. Tr. at 22, 32, 35-36; Fogel Rep. at 1-2, 15.  The district court observed Dr. Fogel's testimony during the sentencing hearing and specifically found that Dr. Fogel's conclusions were "not sufficiently reliable." Sent Tr. 160-61.

most revealing" of the degree to which Boroczk understood the "violent and destructive nature of his conduct towards ██████," and of the extent of defendant's motivation to restrain himself in the future. *Id.* at 161. The district court acted well within its discretion in crediting the defendant's statements immediately after arrest over his statements in pre-sentencing counseling sessions, particularly in light of the other evidence before the court, including contrary expert testimony and the defendant's allocution. *See United States v. Lucas*, 670 F.3d 784, 792 (7th Cir. 2012) ("Sentencing courts have discretion to draw conclusions about the testimony given and evidence introduced at sentencing.").

Boroczk's final procedural argument is that the district court ignored evidence that the risk of recidivism decreases with age. Br. at 19. This argument is not supported by the record. Boroczk argued that recidivism declines with age in his sentencing memorandum, and the district court stated that it had reviewed and considered the parties' written submissions prior to sentencing Boroczk. R. 40 at 26; Sent. Tr. at 158. Instead, the district court implicitly found that such evidence was outweighed by the substantial evidence, including the testimony of both Dr. Rogers and Dr. Fogel, demonstrating that Boroczk had a chronic and permanent sexual interest in children, and that such interests pose a serious risk of recidivism.

At bottom, Boroczk simply disagrees with how the district court weighed the § 3553(a) factors, particularly Boroczk's risk of recidivism and the need to protect the public from him. "[S]entencing judges have discretion over how much weight to give a particular factor." *United States v. Reibel*, 2012 WL 3156315, *3 (7th Cir. Aug. 6, 2012) (citing *United States v. Beier*, 490 F.3d 572, 575 (7th Cir. 2007)); *Garthus*, 652 F.3d 720-21; *United States v. Busara*, 551 F.3d 669, 674 (7th Cir. 2008) (quoting *United States v. Johnson*, 471 F.3d 764, 766 (7th Cir. 2006)). Disagreement with how the district court assessed and weighed the § 3553(a) factors provides no ground for relief as long as the district court gave "meaningful consideration" to those factors. *See United States v. Haskins*, 511 F.3d 688, 696 (7th Cir. 2007); *United States v. Laufle*, 433 F.3d 981, 988 (7th Cir. 2006) (noting that "disagreement with [a district] judges's assessment of the relevant sentencing factors does not by itself warrant reversal, for the question is not how we ourselves would have resolved the factors identified as relevant by section 3553(a) nor what sentence we ourselves ultimately might have decided to impose on the defendant") (citations and quotations omitted). Here, after giving meaningful consideration to the extensive evidence and arguments presented by both parties relevant to the factors set forth in § 3553(a), the court decided that a sentence of 70 years' imprisonment was warranted. The district court judge provided a sufficient

41

explanation for his choice of sentence, and those explanations were supported by the evidence in the record. There was no procedural error.

## II. The Below-Guideline Sentence Imposed by the District Court Was Not Substantively Unreasonable.

Contrary to Boroczk's contention, the sentence imposed by the district court, which was below the advisory Guideline range, was substantively reasonable.

### A. Standard of Review

This Court reviews the substantive reasonableness of a sentence for abuse of discretion. *United States v. Vizcarra*, 668 F.3d 516, 527 (7th Cir. 2012). When the district court imposes a sentence below the advisory Guideline range, this Court presumes that the sentence is reasonable. *United States v. Russell*, 662 F.3d 831, 853 (7th Cir. 2011); *United States v. Noel*, 581 F.3d 490, 495 n.4 & 500 (7th Cir. 2009). To rebut the presumption of reasonableness, a defendant must demonstrate "that his sentence is substantively unreasonable in light of the sentencing factors set forth in section 3553(a)." *Id.*

## B.    Analysis

First, Boroczk argues at length that the presumption in favor of reasonableness does not apply where, as here, "the guideline range exceeds the statutory maximum and the court stacks consecutive sentences."  Br. at 20. This Court has rejected the argument that sentences imposed within the Guidelines applicable to child pornography offenses are entitled to no presumption of reasonableness, and has expressly noted that courts have the discretion to impose consecutive sentences in more serious cases.  *See United States v. Maulding*,  627 F.3d 285, 287 (7th Cir. 2010) (citing *United States v. Beier*, 490 F.3d 572, 575 (7th Cir. 2007) and applying presumption); *Reibel*, 2012 WL 3156315, *3 (rejecting argument that presumption should not apply to within-Guidelines sentence for child pornography offense and stating, "In any event, the potential inaptness of the Guidelines in some sex cases does not obligate district judges to give all sex offenders below-Guidelines sentences."); *Russell*, 662 F.3d at 853 (applying presumption); *Noel*, 581 F.3d at 495 n.4 & 500 (same); *United States v. Klug*, 670 F.3d 797, 800 (7th Cir. 2012) (applying presumption to consecutive sentences).

In *Noel*, the defendant was convicted of three counts of production of child pornography in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography.  *Noel*, 581 F.3d at 493.  Those counts carried a combined

43

statutory maximum of 100 years (30 years on each production count and 10 years on the possession count). *Id.* at 495. Based on a criminal history category of I and an offense level of 48, the defendant's advisory Guideline range was life imprisonment, which reverted to the statutory maximum of 100 years. *Id.* at 495 n.4. The district court sentenced the defendant to 80 years' imprisonment— 25 years' imprisonment on each of the three production counts, and five years on the possession count, with all terms to be served consecutively. *Id.* at 495, 500. On appeal, this Court held that the defendant's sentence was presumptively reasonable because it was "twenty years *below* the guidelines sentence of one hundred years' imprisonment." *Id.* at 500 (emphasis in original); *see also Russell*, 662 F.3d at 853 (38-year sentence for a defendant who was convicted of four counts of violating 18 U.S.C. § 2251(a) was entitled to a presumption of reasonableness even though it was effectively a life sentence because the sentence was below the advisory Guideline range of life imprisonment, which reverted to the statutory maximum of 120 years' imprisonment); *Klug*, 670 F.3d at 800.

Here, similar to *Noel*, Boroczk's advisory Guideline range reverted to the statutory maximum term of imprisonment for his four counts of conviction (130 years' imprisonment). The district court sentenced Boroczk to 70 years' imprisonment, which was well below the advisory Guideline sentence of 130

years' imprisonment. Based on *Noel*, the district court's sentence is entitled to a presumption of reasonableness.

Defendant does not, and cannot, claim that his conduct was less serious than the conduct of other defendants who have received similar sentences. In fact, defendant's offense conduct was among the most serious to which the statutes of conviction apply. Boroczk molested ⬛⬛⬛⬛⬛⬛⬛⬛⬛, created approximately 300 images and multiple videos of that abuse, and then transmitted the images and videos he had created to others via the Internet.

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛  In addition to documenting his molestation of ⬛⬛⬛⬛⬛⬛ ⬛⬛⬛, and transmitting images and videos of that molestation across the Internet, Boroczk amassed a collection of over 8,400 images and approximately 186 videos of child pornography, and considered himself a "kingpin" of child pornography on the Internet.

Indeed, this Court has affirmed a sentence lengthier than the one imposed here in a case involving no molestation by the defendant. *See Noel*, 581 F.3d at 500. In *Noel*, the defendant took nude photographs of his stepbrother's young

son and possessed images of child pornography that depicted other minors engaged in sexual acts. *Id.* Despite the absence of any evidence of sexual abuse of minor victims by the defendant, this Court affirmed the defendant's sentence of 80 years' imprisonment and stated that it could "quickly dismiss" the defendant's argument that his sentence was unreasonable. *Id.* Comparing the facts of this case to those presented in *Noel*, it is difficult to see how defendant's sentence could possibly be deemed substantively unreasonable.

Boroczk raises three cursory arguments in support of his claim that the district court's sentence was substantively unreasonable, none of which rebut the presumption in favor of reasonableness. First, Boroczk argues that the government's decision to charge Boroczk with four counts "possibly" drove the district court's decision to impose an unreasonable sentence because "[t]here is no reason to think that four instances of the same conduct would call for 120 years in prison." Br. at 24. As Boroczk concedes, however, "the executive has the authority to charge multiple offenses," and that the district judge had "the authority to consider" the advisory Guideline range of 130 years' imprisonment. *Id.* at 24-25. In this context, what Boroczk essentially requests is that this Court find that both the applicable Guidelines range and the imposition of consecutive sentences were presumptively unreasonable. Neither the facts nor the law supports such a finding.

46

Contrary to Boroczk's suggestion, each of the four counts in the indictment relates to separate and distinct conduct. The unit of prosecution for a violation of 18 U.S.C. § 2251(a) is the image created using the minor, meaning that the creation of each image is a separate violation of the statute subject to the statutory maximum term of imprisonment. *United States v. Esch*, 832 F.3d 531, 542 (10th Cir. 1987). Here, over the course of three years, Boroczk created approximately 300 images and multiple videos of ███████ engaged in sexually explicit conduct, each of which could have been charged as a separate count. There was nothing substantively unreasonable about the government's decision to charge Boroczk with producing four of the more than 300 images and videos he created, or the district court's decision to impose consecutive sentences, and Boroczk has not come close to showing otherwise.

Boroczk argues generally, without legal support, that "the goals embodied in 18 U.S.C. § 3553(a)(2) . . . do not "point to 70 years as a sentence that resides in a reasonable range." Br. at 25. But Boroczk cites no authority in support of this argument, and the argument is contrary to this Court's decision in *Noel*. Moreover, the district court's discussion of the § 3553(a) factors indicated that it believed that the seriousness of Boroczk's offense and the need for general deterrence warranted a sentence of 70 years' imprisonment. Sent. Tr. at 159-60. In addition, the district court concluded that the 70 year sentence addressed the

47

need for specific deterrence and to protect the public. *Id.* Boroczk claims that Dr. Fogel's opinion that Boroczk was a low risk to re-offend indicates that the 70 year sentence was excessive. Br. at 25. However, the district court explained why it found that Dr. Fogel's opinion lacked credibility, and further explained that Boroczk had a sexual interest in children that rendered him a risk of recidivism. Sent. Tr. at 160-61. That conclusion was supported by Dr. Fogel's own testimony—in which he admitted that Boroczk was a pedophile who had a chronic sexual interest in children—as well as the testimony of Dr. Rogers, who testified that pedophiles present an increased risk of recidivism. Thus, Boroczk's conclusory argument that the district court's sentence was excessive fails to rebut the presumption of reasonableness that attaches to that sentence.

Finally, Boroczk argues that it was substantively unreasonable for the district court to impose a sentence longer than 30 years' imprisonment because the government could "institute civil commitment proceedings against a person who is through to be sexually dangerous" under 18 U.S.C. § 4248. Br. at 25-26. This argument, which was not made to the district court, is a non-starter. *See United States v. Jeffries*, 615 F.3d 909, 911-12 (8th Cir. 2010). In *Jeffries*, the Eight Circuit rejected the same argument regarding civil commitment that Boroczk raises here. *Id.* The *Jeffries* court reasoned that "there is no reason to conclude that the [civil commitment] provisions at issue were meant to displace

48

a district court's initial discretion to consider potential danger to the public in choosing a defendant's sentence." *Id.* at 912. Instead, the *Jeffries* court concluded "that the civil commitment statutes are best viewed as a complement to the district court's sentencing discretion," and the district court did not abuse its discretion "by considering the need to protect the public when it imposed [the defendant's] sentence." *Id.*

In sum, the district court did not abuse its discretion by emphasizing the need to protect the public from Boroczk's chronic sexual interest in children in imposing sentence and the sentence was not substantively unreasonable. This Court should affirm.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court affirm the sentence of Defendant Darrick Boroczk.

Respectfully submitted,
GARY S. SHAPIRO
Acting United States Attorney

DEBRA RIGGS BONAMICI
Assistant United States Attorney
Editor


s/ Jeffrey Perconte
JEFFREY D. PERCONTE
Assistant United States Attorney

## RULE 32 CERTIFICATION

I hereby certify that:

1.     This brief complies with the type volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 11,264 words.

2.     This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the WordPerfect X4 proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

Respectfully submitted,

s/ Jeffrey Perconte
JEFFREY PERCONTE
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-2065

Dated: August 20, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2012, I electronically filed the foregoing BRIEF OF THE UNITED STATES with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

William Theis
Federal Defender Program
53 West Jackson Blvd., Suite 1403
Chicago, IL 60604
*Attorney for Darrick Boroczk*

s/ Jeffrey Perconte
JEFFREY PERCONTE
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-2065