IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 12-1022

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DARRICK C. BOROCZK,
Defendant-Appellant.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division

THE HONORABLE RONALD A. GUZMAN, Judge Presiding
No. 09 CR 647

REPLY BRIEF
FOR DEFENDANT-APPELLANT

[FILED UNDER SEAL – REDACTED VERSION]

> FEDERAL DEFENDER PROGRAM
> Carol A. Brook
> Executive Director
>
> By:   William H. Theis
>       55 E. Monroe Street, Suite 2800
>       Chicago, IL 60603
>       (312) 621-8300

Dated: September 28, 2012

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.    The sentence was procedurally unreasonable. . . . . . . . . . . . . . . . . . . 1

    II.    The sentence was substantively unreasonable. . . . . . . . . . . . . . . . . . 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7). . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rita v. United States*, 551 U.S. 338 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Bradley*, 628 F.3d 394 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Garthus*, 652 F.3d 715 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . 4, 13

*United States v. Jeffries*, 615 F.3d 909 (8th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Klug*, 670 F.3d 797 (7th Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Miller*, 601 F.3d 734 (7th Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Noel*, 581 F.3d 490 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . 9, 10, 13

*United States v. Russell*, 662 F.3d 831 (7th Cir. 2011).. . . . . . . . . . . . . . . . . . . 11, 13

## STATUTORY MATERIALS

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 3584. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 12, 13

U.S.S.G. § 5G1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

U.S.S.G. § 5G1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## OTHER AUTHORITIES

Hanson, "Recidivism and Age: Follow-Up Data from 4,673 Sexual Offenders,"
17 *Journal of Interpersonal Violence* 1046 (2002).. . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Harris et al., *STATIC-99 Coding Rules* (rev. ed. 2003).. . . . . . . . . . . . . . . . . . . . . . . 8

U.S. Sentencing Commission, *2011 Sourcebook of Federal Sentencing Statistics*,
Table 13, found at
http://www.ussc.gov/Data and Statistics/Annual Reports and Sourcebooks
/2011/Table13.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# ARGUMENT

## I. The sentence was procedurally unreasonable.

In imposing a 70-year sentence, the district court stressed Boroczk's risk of recidivism. Contrary to the focus in child pornography cases involving receipt or possession, the court's focus in this case was the risk of Mr. Boroczk's committing further sexual assaults on young children. The district court based its sentence on the belief that Mr. Boroczk was certain for the rest of his life to re-offend. The government has disputed this reading of the transcript, Gov't Br. 36, but the court's remarks at sentencing leave little doubt as to its belief, even though the support for the court's conclusion is lacking.

The district court stated Boroczk lacked "any real motivation to restrain himself in the future, other, of course, than the motivation that comes from a fear of being caught." Tr. 161; A. 17. Continuing this thought, the court observed that "no number of protective safeguards" could protect children if Boroczk was not motivated. Tr. 162; A.18. If "no number of protective safeguards" will suffice, then the court was finding a certainty of recidivism. It is this extreme conclusion that the court had to support with detailed, complete findings that took account of the entire record, including the testimony of the government's expert witness that the actuarial testing revealed Boroczk to be at low risk of re-offending. Tr.

1

119. The district court's doubts about Dr. Fogel's testimony did not support its extravagant finding as to risk.

Regardless of how the degree of risk is quantified, the finding of risk may not ignore or gloss over legitimate considerations that undermine or qualify a finding of risk. It is this crucial shortcoming to which we now turn.

To recapitulate, the court ignored:

- the lower recidivism rates among █████████

- Boroczk's slow, but steady recognition of the wrongfulness of his conduct

- the lowering of recidivism rates as the result of advancing age

Each of these factors was brought to the attention of the district court; each was passed over without comment by the court; each deserved explicit consideration by the court on the record. The court's finding of risk was incomplete and unsupported because the court did not explain how it took into account the significant factors that shed light on the risk of recidivism for Mr. Boroczk.

In response, the government has not attempted the impossible; it has not claimed that the district court gave these factors explicit consideration on the record. Instead, it has claimed that the court had no obligation to explain its 70-year sentence beyond the brief remarks in the sentencing transcript. For the most

part, it has relied on the accepted principle that not every defense argument must be examined by the sentencing judge.[1] In its view, the risk of recidivism for pedophiles in general was a sufficient explanation for Boroczk's sentence.

But Boroczk's counsel presented individual factors that undercut an unthinking reliance on pedophilia as the sole determinant. As demonstrated in Boroczk's opening brief, when the defense presents well-developed arguments, the court has an obligation to consider those arguments and to explain on the record its reasoning, thereby providing this Court will a meaningful basis for appellate review. This obligation is especially weighty in light of the command in 18 U.S.C. § 3584 that the court give special attention to whether it will impose consecutive sentences. Remand is required because the district court failed to respond in a meaningful manner to Boroczk's well-developed arguments.

---

[1] The government has also asserted that a less detailed explanation is acceptable in this case, since the 70-year sentence was a "below range" sentence. Whether the 70-year sentence was below-range is taken up more fully in connection with the substantive reasonableness argument. Regardless of whether the sentence is below- or above-range, the government's argument has a more serious flaw. It has taken *Rita v. United States*, 551 U.S. 338, 356-59 (2007) well beyond its context. In *Rita*, where the defendant's range was 33-41 months, *id.* at 344, the Court found that the explanation for refusing a below-range sentence was barely adequate, but cautioned that the required level of detail in the judge's explanation "depends upon circumstances." *Id.* at 356. The government distorts *Rita* when it suggests that a 70-year sentence allows the skimpy explanation given in this case. The government also glosses over the court's duty under 18 U.S.C. § 3584 to explain why it chose consecutive terms over concurrent terms.

**Recidivism among** ▓▓▓▓▓▓▓▓▓▓  The government has relied principally on the finding that Boroczk is a pedophile, a conclusion in which Dr. Fogel concurred. But the label pedophile does not pre-empt an informed discussion of recidivism. This Court has cautioned that, "It's a mistake to lump together different types of sex offender." *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011). The expert opinion in this case was undisputed that ▓▓▓▓ ▓▓▓▓▓▓ have a lower rate of recidivism than ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Tr.30.

The district court did not respond to the impact of this phenomenon on Mr. Boroczk's risk of recidivism. Instead, it posited that Boroczk was more dangerous than other sex offenders because he performed sexual acts ▓▓▓▓▓▓▓▓▓▓▓▓▓ The court made no effort to respond to the psychological evidence concerning ▓▓▓▓▓▓▓▓▓▓ except to state its own belief that ▓▓▓▓▓▓▓▓▓▓ are more dangerous. If the court had merely said ▓▓▓▓▓▓▓▓▓▓ are more disgusting than ▓▓▓▓▓▓▓▓▓▓▓▓▓ it might have a supportable point, although it does seem fruitless to concentrate on which type of sex offender is more disgusting. But the court was saying that as ▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Boroczk was more likely to re-offend, a conclusion flatly inconsistent with the scientific literature. The court had no basis to make that kind of statement and certainly never acknowledged that it

was staking out a psychological theory that is contrary to expert opinion in this area.

This Court remanded for a similar error in *United States v. Miller*, 601 F.3d 734 (7th Cir. 2010). The district court premised its sentence on the unsupported belief that the rate of recidivism for sex offenders was "massive" and that "lengthy incapacitation is the only way to protect the public." *Id*. at 739. This Court reversed because neither the district court nor the government provided any support in the record for this view and because "the [district] court's comments about the rate of recidivism may be contrary to studies we have previously cited." *Id*.[2] So also in Boroczk's case, the district court had no support for the belief that as ▮▮▮▮▮▮▮▮▮ Boroczk was more likely to recidivate than other sex offenders; in fact, the district court's belief was contrary to the scientific literature brought to the court's attention.

**Boroczk's post-arrest statement.** The government has argued that the district court was allowed to place emphasis on Boroczk's post-arrest statement, which exhibited no remorse, and to ignore Boroczk's realization, after months of counseling, that his conduct was thoroughly unacceptable. As noted in the

---

[2] *Miller* has been cited with approval and applied in reversing a similarly misguided approach to sentencing. *United States v. Bradley'*, 628 F.3d 394, 400 (7th Cir. 2010).

5

opening brief, the court did not make any finding that it disbelieved the reports of Dr. Morgan or that it disbelieved that Boroczk had changed his unacceptable views. Instead, the court made no mention of Dr. Morgan's reports and the events related in those reports. Boroczk's remorse or lack of remorse was a valid indicator of his risk of recidivism. Contrary to the government's representation, Gov't Br. 40, the court did not credit the post-arrest statements "over" the statements made by Boroczk during his many months of counseling and then at allocution. One will search the sentencing transcript in vain for any statement by the court that it was relying on the post-arrest statement because it rejected Dr. Morgan's account of the counseling sessions. Rather, the district court made no comment about this significant portion of the record.

Perhaps the government is relying on the theory that such a finding was "implicit," or that the finding was obvious in some way. When the next 70 years of a person's future (assuming he has another 70 years) are at stake, it is not too much to ask that the court indicate that it has patiently considered all the evidence brought before it and made a deliberate choice about how to weigh the evidence. With so much at stake, this process should not be left to inference, that is, a judgment as to what could have been going through the court's mind. One would like to believe that any court makes the right decision for the right

reasons, but unless the court makes a record, all are left to guess whether the right decision was made for the right reasons. For this reason, a district court must "synthesize the evidence in a manner that accounts for conflicting evidence or the gaps in a party's evidentiary presentation." *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) (Sotomayor, J.).

**The effect of advancing age.** The government has attempted to brush off this argument by asserting that the district court "implicitly," Gov't Br. 40, found that Boroczk would not have a reduced risk with advancing age (and treatment). As demonstrated above, when the stakes are so high and the court's explanation is non-existent, an "implicit" finding will not suffice. All the authorities agree that, in general, the risk of recidivism decreases with advancing age. This decrease becomes even more significant for ███████████████████ ███████████████████████████. Hanson, "Recidivism and Age: Follow-Up Data from 4,673 Sexual Offenders," 17 *Journal of Interpersonal Violence* 1046, ███ (2002)████████████████████████████████ ███████.

The impact of age and ████████████████ on recidivism is well-represented by the following graph presented in the Hanson article (at page 1054):

7



Hanson's findings underlie the instructions for scoring Static-99. Harris et al., *STATIC-99 Coding Rules* ▮ (rev. ed. 2003), found at http://www.static99.org/pdfdocs/static-99-coding-rules_e.pdf. Static-99 is a standard risk assessment test for sex offenders, which the government's expert championed. In pursuing its unsupported theory about recidivism, the district court ignored the data recognized by experts.

**II.    The sentence was substantively unreasonable.**

The 70-year sentence merits no presumption of reasonableness. The government has taken the position that the top of Boroczk's sentencing range was 130 years, and therefore his 70-year sentence is presumptively reasonable. In

its view, since four of the counts carry a 30-year maximum and the fifth count carries a 10-year maximum, and since the court had discretion to make the sentences consecutive, the top of Boroczk's range was 130 years. Gov't Br. 43-45. Under the government's approach, if Boroczk had been charged with ten 30-year counts, any sentence under 300 years would have been presumptively reasonable.

Support for the government's position is most explicitly stated in *United States v. Noel*, 581 F.3d 490 (7th Cir. 2009). Noel's adjusted offense level was 48, and his guideline range was life in prison. The district court imposed consecutive sentences totaling 80 years. This Court remarked that the top of Noel's range was 100 years, the total of the maximum sentences attached to each count. "The guidelines range for offense levels 43 and higher is life in prison. Where, as here, the guidelines range exceeds the statutory maximum, the statutory maximum becomes the guidelines sentence. U.S.S.G. § 5G1.1(a)." 581 F.3d at 495 n.4.

*Noel* rests on a misreading of the Guidelines Manual. U.S.S.G. § 5G1.1(a), on which *Noel* relied, speaks solely to the situation in which the defendant is sentenced on a single count, and the guideline range is in excess of the maximum sentence for that single count. Section 5G1.1 provides that the maximum statutory sentence is the guideline sentence. This provision recognized, even in

9

the pre-*Booker* era, that Congress is the final arbiter of the maximum sentence; regardless of how high a guideline range can be calculated, Congress can declare that a particular offense demands no more than a specific measure of punishment. *Noel's* miscue lay in assuming that the default rule in section 5G1.1 could be applied to multiple counts, generating a guidelines range of decades or, even, centuries in prison. *Noel* ignored the next section in the Guidelines Manual.

A wholly separate guideline provision, U.S.S.G. § 5G1.2, deals with multiple counts, and it does not support the conclusion that the top of the guideline range will be the sum of the maximum sentence for each count. Unlike section 5G1.1, section 5G1.2 does not define a guideline sentence; instead, it advises how to implement a sentence when the calculated range exceeds the statutory maximum and multiple counts are involved. And this advice must be taken in conjunction with the statutory presumption, 18 U.S.C. § 3584, in favor of concurrent sentences on multiple counts sentenced at the same time. It makes little sense to talk about a presumption of reasonableness accorded to consecutive sentences when the governing statute sets up a presumption in favor of concurrent sentences. *Noel* did not seem to consider the effect of section 3584, and one may confidently believe that this Court did not set out to disobey the Congressional command found in section 3584.

10

Boroczk submits that the proper benchmark against which to judge substantive reasonableness is 30 years, the statutory maximum. That benchmark would also give full effect to the congressional directive regarding concurrent sentences. As a less favored alternative, 470 months, the figure used by the Sentencing Commission as the equivalent of a life sentence, would provide a possible benchmark. See *United States v. Russell*, 662 F.3d 831, 853 (7th Cir. 2011) (considering the Sentencing Commission's view that a life sentence should be equated with a sentence of 470 months). Under either benchmark, the 70-year sentence in this case would receive no presumption of reasonableness.

Regardless of whether the 70-year sentence is below or above the sentencing range, the 70-year sentence is unreasonable because it represents an unjustified disparity. The United States Sentencing Commission has reported that in the fiscal year 2011 the mean number of months imposed in sexual abuse cases was 124 months, and in child pornography cases the mean number of months was 119 months. It also exceeds the mean of 238 months in murder cases. See U.S. Sentencing Commission, *2011 Sourcebook of Federal Sentencing Statistics*, Table 13, found at http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2011/Table13.pdf. It is readily seen that Boroczk's sentence of 840 months far

11

exceeds the mean in each of these three categories. Significantly, the 15-year sentence imposed on each of the first four counts fits more comfortably with the mean sentences imposed in child pornography and sexual abuse cases. Although all would agree that child pornography is a horrific offense and that the offense in this case was especially loathsome, when the total sentence is almost four times the sentence for murder, and almost seven times the sentence for sexual abuse, there is an unwarranted disparity.

   Such a disparate sentence was possible only because the government chose to bring multiple counts. There is no dispute that every single image could have been charged as a separate count, and it was the executive's privilege to bring multiple counts. Moreover, courts traditionally had great discretion to make the sentences consecutive or concurrent. But Congress, modifying that historical background, has expressed a preference in section 3584 for concurrent sentences, requiring the sentencing judge to pay close attention to the 18 U.S.C. § 3553(a) factors if the judge chooses to reject that preference. Even if the judge follows the proper procedure in rejecting concurrent sentences, this Court still has an obligation to consider the end product and determine whether the 70-year sentence introduces unwarranted disparity of treatment.

12

Without a doubt, this Court has approved sentences in excess of 30 years in child pornography cases based on the stacking of consecutive sentences. *United States v. Klug*, 670 F.3d 797 (7th Cir. 2012) (consecutive sentences totaling 384 months); *United States v. Russell*, 662 F.3d 831 (7th Cir. 2011) (consecutive sentences totaling 456 months); *United States v. Noel*, 581 F.3d 490 (7th Cir, 2009) (consecutive sentences totaling 80 years). But these cases have not examined this question in light of the rule established by section 3584.

Finally, the government has minimized the relationship between civil commitment and the sentencing decision. In the government's view, relying on the Eighth Circuit decision in *United States v. Jeffries*, 615 F.3d 909, 911-12 (8th Cir. 2010), a district judge need pay no heed to civil commitment. This Circuit has not rejected civil commitment as a backstop to the criminal proceedings and has, in fact, suggested that it may have a role to play. In *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011), this Court, discussing the shortcomings of the defense presentation, noted that the defense "did not suggest that the defendant might be civilly committed, as a continuing menace to society, after completion of his prison term." The prospect of civil commitment protects the public if after decades in prison the defendant remains a threat to society. That prospect avoids

any perceived necessity of making a prediction of what someone will be like many years into the future.

## CONCLUSION

For these reasons, as well as those set out in the opening brief, it is respectfully requested that the case be remanded for re-sentencing in accordance with the Court's opinion.

Dated this 28th day of September, 2012, at Chicago, Illinois.

                                            Respectfully submitted,

                                            FEDERAL DEFENDER PROGRAM
                                            Carol A. Brook
                                            Executive Director

By:    *s/ William H. Theis*
           William H. Theis
           55 E. Monroe Street
           Suite 2800
           Chicago, IL 60603
           312.621.8300

## CERTIFICATE PURSUANT TO APPELLATE RULE 32(a)(7)

I, William H. Theis, hereby certify that this brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a)(7), in that Defendant-Appellant's reply brief contains 2,957 words. This certification is based on the word count of Corel Word Perfect 14.0, the word processing program used in preparing Defendant-Appellant's reply brief.

                                        FEDERAL DEFENDER PROGRAM
                                        Carol A. Brook
                                        Executive Director

                    By:    *s/ William H. Theis*
                                        William H. Theis
                                        55 E. Monroe Street
                                        Suite 2800
                                        Chicago, IL 60603
                                        312.621.8300

Dated: September 28, 2012

# CERTIFICATE OF SERVICE

I, William H. Theis, certify that on September 28, 2012, I electronically filed the foregoing with the clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/William H. Theis</u><br>
William H. Theis

Dated: September 28, 2012