# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

### No. 12-1022

---

## UNITED STATES OF AMERICA,
### Respondent-Appellee,

### v.

## DARRICK C. BOROCZK,
### Petitioner-Appellant.

---

**Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division**

**THE HONORABLE RONALD A. GUZMAN, Judge Presiding
No. 09 CR 647**

---

## APPELLANT'S PETITION FOR REHEARING
## AND REHEARING *EN BANC*

---

FEDERAL DEFENDER PROGRAM
Carol A. Brook
Executive Director

By:  William H. Theis
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8300

*Attorney for Petitioner-Appellant
Darrick C. Boroczk*

Dated: February 15, 2013

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

The undersigned counsel of record for Petitioner-Appellant Darrick C. Boroczk furnishes the following list in compliance with Fed. R. App. P. 26.1 and Circuit Rule 26.1:

1.     The full name of the only party represented is Darrick C. Boroczk.

2.     Darrick C. Boroczk is a natural person and not a corporation.

3.     In both the district court and the Court of Appeals, the Federal Defender Program has been and is the only law firm to appear on behalf of Mr. Boroczk.


*s/William H. Theis*
William H. Theis


Dated: February 15, 2013

i

# TABLE OF CONTENTS

**Page(s)**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

STATEMENT UNDER FRAP 35(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REASONS WHY REHEARING SHOULD BE GRANTED. . . . . . . . . . . . . . 4

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE PURSUANT TO FED. R. APP. P. 35(b)(2). . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Following page 17

   Opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A. 1

   Excerpt from Sentencing Transcript. . . . . . . . . . . . . . . . . . . . . . .  A. 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Gall v. United States*, 552 U.S. 38 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Rita v. United States*, 551 U.S. 338 (2007). . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*United States v. Bradley*, 628 F.3d 394 (7th Cir. 2010). . . . . . . . . . . . . . . 11

*United States v. Buretz*, 411 F.3d 867 (7th Cir. 2005). . . . . . . . . . . . . . . . . 5

*United States v. Craig*, 2012 U.S. App. LEXIS 25731
(7th Cir. December 18, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005). . . . . . . . . *Passim*

*United States v. Diaz-Rios*, 2013 U.S. App. LEXIS 2025
(7th Cir. January 30, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Garcia-Oliveros*, 639 F.3d 380 (7th Cir. 2011). . . . . . . . . . . . 6

*United States v. Gary*, 613 F.3d 706 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 3

*United States v. Jackson*, 546 F.3d 465 (7th Cir. 2008). . . . . . . . . . . . . . . . . 6

*United States v. Johnson*, 643 F.3d 545 (7th Cir. 2011). . . . . . . . . . . . . . . . . 6

*United States v. Miller*, 601 F.3d 734 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . 11

*United States v. Miranda*, 505 F.3d 785 (7th Cir. 2007). . . . . . . . . . . . . . . . . 6

*United States v. Patrick*,  2013 U.S. App. LEXIS 3183
(7th Cir. February 14, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 13

*United States v. Robertson*, 662 F.3d 871 (7th Cir. 2011). . . . . . . . . . . . . . . . 6

*United States v. Schroeder*, 536 F.3d 746 (7th Cir. 2008).. . . . . . . . . . . . . . . 6

*United States v. Vidal*, 2013 U.S. App. LEXIS 2137
(7th Cir. January 31, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*United States v. Villegas-Miranda*, 579 F.3d 798 (7th Cir. 2009). . . . . . . . . . 6

*United States v. Williams*, 553 F.3d 1073 (7th Cir. 2009). . . . . . . . . . . . . . . 6

*United States v. Wurzinger*, 467 F.3d 649 (7th Cir. 2006). . . . . . . . . . . . . 9, 13

## Statutes

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 3584. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S.S.G. § 3B1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 5G1.2(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Other Authorities

Karen Gelb, *Recidivism of Sex Offenders Research Paper* 26 (2007)
(Sentencing Advisory Council, State of Victoria, Australia). . . . . . . . . . . . . . 10

## STATEMENT UNDER FRAP 35(b)

Rehearing and rehearing en banc are being sought because the panel's decision conflicts with a long line of cases within this Circuit that impose a duty on the district court to consider a defendant's non-frivolous sentencing arguments and give a reasoned explanation for rejecting them. This duty is most notably found in *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005), but has been restated and applied by this Court on numerous occasions. Indeed, this Court, relying on *Cunningham*, has vacated the sentence in three other cases after the panel opinion was issued. The panel opinion, although it acknowledged that Mr. Boroczk had non-frivolous arguments, ruled that the district court could get by with an "implicit" rejection of those arguments, even though the end result was a sentence of 70 years in prison. In upholding the sentence, the panel relied on a test that a district judge may summarily reject a non-frivolous argument as long as anyone acquainted with the facts could have surmised why the argument had been rejected.

## INTRODUCTION

Mr. Boroczk received a 70-year sentence for child pornography offenses. This sentence was constructed through the imposition of consecutive sentences, 15 years on each of four counts and 10 years on a fifth count. His

1

projected release date is August 14, 2070, when he would be 93 years old   if he lives so long. The district court's explanation of this sentence occupies barely four full pages of transcript, and came after lengthy written submissions and a sentencing hearing that extends over 150 pages of transcript.

The district court found that the risk of recidivism required a lifetime of incarceration. In announcing this appraisal, the district court focused on Mr. Boroczk's making his own small children the victims of the charged offenses and on Mr. Borock's failure to demonstrate remorse at the time of his arrest. A. 23-24.[1] However, the district court made no mention of three important facts, fully developed in the record, that pulled in the opposite direction on the question of recidivism. First, incest offenders have a markedly lower rate of recidivism for sex offenses. The district court fastened on an aspect of the case that, when properly considered in light of the scientific literature, actually pointed in the opposite direction. Second, Mr. Boroczk, while awaiting many months for the disposition of his case, had voluntarily engaged

---

[1] This petition contains an appendix. "A.     " indicates a reference to pages in that appendix. The appendix includes the panel opinion and an excerpt, with redactions, from the transcript of the sentencing hearing. The unredacted transcript of the sentencing hearing is available to the Court on the electronic docket, and the unredacted excerpt is included in the appellant's opening brief, which was filed under seal.

"Tr.     " indicates a reference to pages in the sentencing transcript.

in counseling with a clinical psychologist and had come to realize the horrific nature of his crimes. The district court never mentioned this significant course of events, and certainly never made any ruling that Mr. Boroczk's remorse was insincere. Finally, the district court gave no consideration to the substantially declining level of recidivism among sex offenders during the aging process, a phenomenon that is well-documented in the scientific literature. These were compelling reasons not to impose a virtual life sentence; and contrary to the teaching in cases like *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005), the district court made no effort to explain its sentence in response to these considerations.

The panel opinion in this case, affirming the sentence, acknowledged that the defense evidence "was not specifically mentioned" by the district court, A. 13, but the panel justified this treatment on the theory that "the district court rejected it by implication when it focused on the fact that Boroczk is a pedophile who expressed an alarming remorse for his crimes after being caught." A. 13. The district court's approach, said the panel, was correct because "[d]istrict courts need not belabor the obvious." That is, "[t]he judge need not be explicit where 'anyone acquainted with the facts would have known without being told why the judge had not accepted the argument.'" A. 13, citing *United States v. Gary*, 613 F.3d 706, 709 (7th Cir.

3

2010), and *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). Regrettably, the panel opinion demonstrates a profound misunderstanding of what is required by *Cunningham* and by the numerous cases that have properly applied *Cunningham's* teaching.

## REASONS WHY REHEARING SHOULD BE GRANTED

**The panel opinion erroneously dispensed with the requirement that the sentencing judge create a record that permits meaningful appellate review.**

The risk of recidivism was the driving force behind the district court's choice of sentence. In reaching its conclusion, the district court emphasized portions of the record that it believed bore on recidivism, but wholly ignored robust elements of the record that supported a contrary view. That approach is impermissible.

The governing law is anchored in *Rita v. United States*, 551 U.S. 338 (2007), where the Supreme Court stated, "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 356. Shortly afterward, the Supreme Court in *Gall v. United States*, 552 U.S. 38, 50 (2007) confirmed that a sentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."

Even before *Rita* and *Gall*, this Court in *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005), required that a district court explain its sentencing decision in enough detail to allow meaningful appellate review. "[W]henever a district judge is required to make a discretionary ruling that is subject to appellate review, we have to satisfy ourselves . . . that he considered the factors relevant to that exercise." *Id*. at 679. In *Cunningham*, the defendant presented evidence of mental issues that argued in mitigation. The district court in imposing sentence made no mention of Cunningham's mental problems. This Court concluded that it could not have much confidence in the sentencing decision when the district court "passed over in silence the principal argument," and that argument "was not so weak as not to merit discussion." *Id*.

Once a sentencing factor exhibits enough merit to be worthy of comment, the district court must then explain in sufficient detail why that factor does or does not influence the district court's choice of sentence. The district court must do more than give a generalized statement that it has considered the arguments of the parties. *United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005). The record must confirm that, "the judge has given meaningful consideration to the [18 U.S.C.] section 3553(a) factors." *United States v. Buretz*, 411 F.3d 867, 878 n.11 (7th Cir. 2005).

5

This Court has reversed within-range sentences when a district court has made a conclusory rejection of a defendant's non-frivolous sentencing arguments. *United States v. Robertson*, 662 F.3d 871 (7th Cir. 2011) (failure to treat rehabilitation and criminal history arguments with meaningful discussion); *United States v. Johnson*, 643 F.3d 545, 549 (7th Cir. 2011) (crack-powder disparity); *United States v. Garcia-Oliveros*, 639 F.3d 380, 382 (7th Cir. 2011) (even though arguments in mitigation were not unusual, court erred in not explaining its choice of sentence); *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009) (eligibility for concurrent sentences); *United States v. Williams*, 553 F.3d 1073, 1084-85 (7th Cir. 2009) (learning disability); *United States v. Jackson*, 546 F.3d 465, 472 (7th Cir. 2008) (youth); *United States v. Schroeder*, 536 F.3d 746, 756 (7th Cir. 2008) (impact of incarceration on defendant's family); *United States v. Miranda*, 505 F.3d 785, 794 (7th Cir. 2007) (mental illness); *United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005) (diminished mental capacity).

Three recent decisions, issued shortly after the panel opinion in this case, illustrate this facet of *Cunningham*. In *United States v. Vidal*, 2013 U.S. App. LEXIS 2137 (7th Cir. January 31, 2013), the defendant introduced detailed evidence of his psychiatric difficulties, including a doctor's report documenting that he was positively responding to treatment and for that

reason was less likely to recidivate. This Court canvassed its authorities and distilled them as a reminder that it will reverse "when the district court's discussion is so cursory that we are unable to discern the court's reasons for rejecting the argument." *Id*. at *6. Although the district court noted that Vidal had "mental health issues," it did not discuss them. In particular, the district court made no mention of the expert's opinion regarding risk of recidivism. This Court vacated for re-sentencing, because the sentencing court's treatment of the mental health issues was too cursory to allow meaningful appellate review.

> Although it [the district court] acknowledged that Vidal had mental-health issues, its statement gives us no insight into the judge's evaluation of that condition. . . . [M]ore than that is needed: The mention of a word is not the same thing as a discussion or an explanation. Particularly because Dr. Pearlson's report went beyond describing Vidal's mental disorders and predicted that he is less likely than the average person to recidivate, there was a need for the district court to explain why it thought that the latter point did not justify a lighter sentence. In short, this is not a case in which the record makes clear the court's reasons for rejecting the proffered argument, see *Rita v. United States,* 551 U.S. 338, 357  58 . . . (2007) . . .

*Id*. at *6-7.

The same point was reinforced in *United States v. Diaz-Rios*, 2013 U.S. App. LEXIS 2025 (7th Cir. January 30, 2013). Diaz-Rios advocated for a mitigating role in a drug offense, since he was a one-time courier. The district court focused on the over all weight of the drugs and made no mention of any

other factor in denying a reduction under U.S.S.G. § 3B1.2. This Court

accepted that the district court was aware that it could grant the reduction

despite the weight of the drugs. But this Court concluded that the district

court erred when it did not explain on the record how factors other than the

weight of the drugs affected its decision to deny a reduction.

> . . . we cannot tell whether the district court compared
> Diaz Rios's role in the offense against those of average
> participants, as it should have. . . . The court should have looked
> at his role in the conspiracy as a whole, including the length of
> his involvement in it, his relationship with the other
> participants, his potential financial gain, and his knowledge of the
> conspiracy. . . .

*Id*. at *11.

The most recent reversal for failure to apply *Cunningham* came in

*United States v. Patrick*, 2013 U.S. App. LEXIS 3183 (7th Cir. February 14,

2013). The district court imposed a 30-year sentence consecutive to a 20-year

sentence previously imposed by a state court. The defendant's background

included trafficking in minors and murdering another pimp, but he had

cooperated with the government, which recommended a concurrent sentence

of 300 months. The district court acknowledged the government's

recommendation and stated that, although it originally considered a sentence

of life, it would impose 360 months consecutive to the state sentence, because

the defendant "ruined the lives" of people with whom he came in contact. *Id*.

at *10. This Court found the district court's remark wanting as a required explanation. "We can assume that the judge was interested in assuring that there would be sufficient marginal deterrence for Patrick's additional crimes, but even if he thought that a sentence of 300 months concurrent to the state sentence was not enough, we have no idea why he believed that a de facto life sentence was the only alternative." *Id*. This Court further stressed, in accord with an earlier decision, "'[D]eath in prison is not to be ordered lighly, and the probability that a convict will not live out his sentence should certainly give pause to a sentencing court.'" *Id*. at *11, *quoting United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006).

The panel opinion stands in sharp contrast with the *Cunningham* line of cases, including *Vidal*, *Diaz-Rios*, and *Patrick*. The district court imposed the 70-year sentence because of its assessment of Mr. Boroczk's risk of recidivism.[2] In the district court's view, Mr. Boroczk's risk was demonstrated by (1) abusing his own small children and (2) showing no remorse at the time

---

[2] Mr. Boroczk argued to the panel that the district court believed that Mr. Boroczk was certain for the rest of his life to recidivate. The panel rejected this characterization and expressed the view that the district judge was merely saying that it could not rule out Mr. Boroczk's re-offending in the future. A. 16. Given the district court's statement on the record, A. 23-24, Mr. Boroczk stands by his characterization of the district's finding. But under either reading, the district court's choice of sentence rested on its belief about Mr. Boroczk's risk of recidivism.

9

of his arrest. But there was more in the record for the district court to consider, and the district court failed to consider the entire record.[3]

First, incest, especially with children too young to give consent in any sense of the word, is a particularly abhorrent, repulsive act. One can well understand the outrage that anyone would express toward that act. But the question was whether Mr. Boroczk's incestuous acts made him more likely to recidivate. The district court's remarks indicate that it found such a linkage. A. 23, lines 11-13, 18, 21-22. But the scientific literature, brought to the court's attention, Tr. 30, is quite to the contrary. *E.g.*, Karen Gelb, *Recidivism of Sex Offenders Research Paper* 26-27 (2007) (Sentencing Advisory Council, State of Victoria, Australia), available at http://www.secasa.com.au/reports/Recidivism_Sex_Offenders_Research_Pape r.pdf. Dr. Gelb's study documented a recidivism rate for sex offenses among incest offenders of 6%, as compared to rates 15-16% for non-incest sex offenders. When a district court sentences upon an unsupported belief, it

---

[3] One of Mr. Boroczk's experts, who testified at the hearing, expressed the opinion that Mr. Boroczk was at low risk to re-offend. The district court did not credit that testimony. A. 9. Of course, rejecting that testimony did not mean Mr. Boroczk was at an increased risk to re-offend. And even the government's expert agreed that standard actuarial tests put Mr. Boroczk at a low risk of re-offending, Tr. 119, a piece of testimony never acknowledged by the district court. The district court's finding about recidivism, then, rested on its appraisal of the incestuous nature of the offenses and Mr. Boroczk's lack of remorse.

10

errs. *United States v. Miller*, 601 F.3d 734, 739 (7th Cir. 2010) (erroneous belief about recidivism rate of sex offenders); *accord*, *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010). At a minimum, the district court had an obligation to acknowledge that it was rejecting a solidly supported body of research and to explain, if it could, why it was reaching a contrary conclusion about recidivism among incest offenders. This part of the district court's remarks hardly qualifies as a decision that would be understood by "anyone acquainted with the facts," since it was made in spite of the facts.

Second, the district court legitimately regarded remorse as having a bearing on recidivism, but its treatment of remorse ignored the entire record. Upon his arrest, Mr. Boroczk showed no remorse; indeed, he demonstrated callousness toward his innocent victims. Mr. Boroczk does not dispute that part of the record. However, during the many months between arrest and sentencing, he entered into a voluntary program of counseling with a clinical psychologist. During the initial sessions, as reported by the psychologist, Mr. Boroczk continued to express the view that he had done nothing wrong, but through the counseling process he came to understand that his actions were deplorable. He expressed genuine remorse. The psychologist submitted two reports in which he stated that Mr. Boroczk had good prospects not to re-offend. R. 40, Ex. I. The district court never considered this part of the record

11

and never voiced a belief that Mr. Boroczk's path toward remorse was feigned or insincere.[4] Just like the district court in *Vidal*, the district court in this case had an obligation to consider the expert's opinion and explain why the expert's opinion provided or did not provide a path to leniency. If the record contained only evidence about Mr. Boroczk's initial lack of remorse, then "anyone acquainted with the facts" might be inclined to place more significance on Mr. Boroczk's lack of remorse. But the record contained much more, and the district court erred in ignoring it. Not even an "anyone acquainted with the facts" standard can sustain the sentence, since such a standard must require acquaintance with all the facts, not some of the facts.

Third, the district court made no mention of the well-recognized fact that recidivism declines as the individual ages. *United States v. Craig*, 2012 U.S. App. LEXIS 25731, at *6-7 (7th Cir. December 18, 2012) (Posner, J., concurring). Although, as the panel correctly observed, A. 12, no one has a crystal ball to foretell with certainty whether an individual will recidivate, the declining risk of recidivism was a factor that should have been addressed in light of the evidence brought to the court's attention. Otherwise, a district

---

[4] Although the district court rejected the testimony of the consulting expert, A. 9, it made no mention of the clinical psychologist who had counseled Mr. Boroczk and expressed the opinion that Mr. Boroczk was a good candidate not to re-offend.

court could always impose the maximum sentence in any case on the theory that it cannot predict whether the defendant will re-offend.

Finally, although the guideline range for Mr. Boroczk worked out to be "life," no count carried more than 30 years in prison. Under 18 U.S.C. § 3584, the default rule was to impose concurrent sentences. Although the district court obviously wanted to keep Mr. Boroczk in prison forever, it gave no explanation for why it was imposing a 70-year sentence for conduct that Congress thought worthy of no more than 30 years. That Mr. Boroczk engaged in multiple offenses would not necessarily make him so much more likely to re-offend that consecutive sentences could be imposed without recognition of the demands imposed by section 3584. Indeed, it is the rare child pornography offender who creates or possesses a single piece of pornography. Like the district court in *Patrick*, the district court in this case did not adequately explain why it ordered a life sentence, a sentence "not to be ordered lightly." *United States v. Patrick*, 2013 U.S. App. LEXIS 3183, at *11 (7th Cir. February 14, 2013), *quoting United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006).[5]

---

[5] The district court's silence is especially curious, since for each of the first four counts, it imposed a sentence of 15 years, although the maximum sentence on each of these counts was 30 years. This structure is inconsistent with the advice contained in U.S.S.G. § 5G1.2(d).

13

The *Cunningham* line of cases recognizes that it is impossible to impose a rigid template on the sentencing process. The district court need not respond to every argument that has been made (or could have been made). But once a defendant makes an argument that calls for a response, the district court must give a reasoned reply. Under *Cunningham*, the district court, as recognized by the panel opinion, had to grapple with the question of recidivism, since it was the centerpiece of the sentencing proceedings in this case. But the panel opinion gives short shrift to the district court's related obligation to state on the record how it came to its result. Once the district court took up the question of recidivism, it had little room to rely on "implied" resolutions of key factual issues regarding recidivism. It could not espouse a view of recidivism among incest offenders that had no basis in fact. It could not rely on half the story by omitting any reference to Mr. Boroczk's progress in counseling sessions. It could not ignore the obvious implications of the passage of time on Mr. Boroczk's risk of recidivism. As *Vidal* rightly observed, "The mention of a word is not the same thing as a discussion or an explanation." *United States v. Vidal*, 2013 U.S. App. LEXIS 2137, at *6-7 (7th Cir. January 31, 2013)

When the stakes are so high, that is, when the defendant faces a virtual life sentence, an "implicit" resolution of knotty sentencing issues

14

should be disfavored. The overriding obligation on the district court is to explain the court's reasoning, not merely state a result that ignores substantial portions of the record.

## CONCLUSION

For these reasons, Mr. Boroczk respectfully requests that the Court rehear his appeal or, in the alternative, that it rehear his appeal en banc, and that it grant him a remand for re-sentencing.

Dated this 15th day of February, 2013, at Chicago, Illinois.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
    Carol A. Brook
Executive Director

By:   *s/ William H. Theis*
    William H. Theis
    55 E. Monroe Street
    Suite 2800
    Chicago, IL 60603
    312.621.8300

## CERTIFICATE PURSUANT TO FED. R. APP. P. 35(b)(2)

I, William H. Theis, hereby certify that this petition complies with the volume limitation of Federal Rule of Appellate Procedure 35(b)(2), in that the petition for rehearing and rehearing *en banc* does not exceed 15 pages, exclusive of material not counted under Federal Rule of Appellate Procedure 32.

FEDERAL DEFENDER PROGRAM
Carol A. Brook
Executive Director

By:     *s/ William H. Theis*
William H. Theis
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8300

*Attorney for Petitioner-Appellant*
*Darrick C. Boroczk*

Dated: February 15, 2013

# CERTIFICATE OF SERVICE

I, William H. Theis, certify that on February 15, 2013, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

> FEDERAL DEFENDER PROGRAM
> Carol A. Brook
> Executive Director
>
> By:  *s/ William H. Theis*
> William H. Theis
> 55 E. Monroe St., Suite 2800
> Chicago, IL 60603
> (312) 621-8300
>
> *Attorney for Petitioner-Appellant*
> *Darrick C. Boroczk*

Dated: February 15, 2013

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1022

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRICK C. BOROCZK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 647    **Ronald A. Guzman**, *Judge.*

ARGUED OCTOBER 23, 2012—DECIDED JANUARY 18, 2013

Before FLAUM and SYKES, *Circuit Judges*, and RANDA,
*District Judge.*[*]

RANDA, *District Judge.*  Darrick C. Boroczk ("Boroczk"),
a self-described "kingpin" of child pornography on the
internet, created hundreds of sexually explicit images
and videos involving two of his own children. Boroczk

---

[*] The Honorable Rudolph T. Randa, United States Court for
the Eastern District of Wisconsin, sitting by designation.

pled guilty to four counts of manufacturing and one count of possessing child pornography. After a daylong sentencing hearing, the district court imposed four 15-year sentences on the manufacturing counts and a 10-year sentence on the possession count, to be served consecutively, for a total of 70 years' imprisonment. On appeal, Boroczk argues that the district court committed procedural error and imposed a substantively unreasonable sentence. Finding no merit in Boroczk's arguments, we affirm the 70-year sentence.

## I. Background

The facts in this case are disturbing and graphic, but they must be described in some detail given the nature of Boroczk's challenge to the sentence. Boroczk has five children, two of whom were involved in the above-described incidents. Between 2006 and 2008, Boroczk created approximately 300 still images and multiple videos of his three- to five-year-old daughter and/or his two-year-old son engaging in sexually explicit conduct. In addition to these images and videos, authorities found approximately 8,452 still images and 186 videos of child pornography on the hard drive of Boroczk's computer. In count five of the indictment, Boroczk was charged with possessing the foregoing items of child pornography. 18 U.S.C. § 2252A(a)(5)(B). In counts one through four, Boroczk was charged with manufacturing child pornography. 18 U.S.C. § 2251(a).

Boroczk was charged on July 29, 2009 and arrested the following day. Speaking with law enforcement, Boroczk

initially told agents that he had never taken any "inappro-priate" pictures of his children. Presentence Report ("PSR"), Ex. B at 4. However, after agents told Boroczk that his likeness had been captured in pictures with his children, Boroczk admitted to taking pornographic pictures of his kids, although he claimed that he "defi-nitely" took fewer than 100 pictures. *Id.*

When asked what drove him to take pornographic pictures of his own children, Boroczk replied, "Curiosity." *Id.* at 6. Boroczk further stated that while he was chatting online, a person with whom he was chatting would occasionally ask if he had ever taken pornographic pictures of his own children. In response, Boroczk would on occasion have his children show their chest or buttocks to a webcam so the person he was chatting with could see them in real time. *Id.*

Agents then asked Boroczk if he ever inappropriately touched his children. Boroczk responded, "I'm sure I did, with my hand, topically." *Id.* However, Boroczk denied that he ever touched his son, or that he made his children touch or perform sexual acts on each other. *Id.* Further, Boroczk claimed that he never touched his children with his penis, and that his penis was never near his children. *Id.*

Agents then confronted Boroczk with twenty images of his children recovered from a computer in Pennsyl-vania. *Id.* Boroczk admitted that he took all of the pictures, and that the images were of his daughter and/or his son. These images included: (1) Boroczk's daughter lying on her back with her legs spread while Boroczk's

erect penis was pressed against her vagina; (2) Boroczk's daughter lying on an open diaper with her legs spread and Boroczk's erect penis in her right hand; and (3) Boroczk's son lying on his back with his legs spread and Boroczk's daughter touching his exposed penis and testicles. (Boroczk stated that he told his daughter to touch his son's penis, and that his daughter "did not have any problem with it"). *Id.* at 6-10.

Agents then asked Boroczk to describe how he touched his children. Boroczk said that he tried to penetrate his daughter's vagina and anus with his penis but "it wouldn't go in" and she said it hurt. Instead, Boroczk rubbed the tip of his penis against her vagina and anus, and inserted the tip of his penis into her vagina. Further, Boroczk admitted that he had her masturbate him by having her touch his penis with her hand. Boroczk stated that on a few occasions, he ejaculated on her stomach. *Id.* at 10. When he was touching her, Boroczk told his daughter that "daddy loves her and won't do anything to hurt her." *Id.* at 11.

After initially denying that he touched his son, Boroczk later admitted that he masturbated him because he was "curious to see if a child that young could get an erection." *Id.* at 10. In addition, Boroczk admitted that he instructed his daughter to touch his son's penis and testicles. Boroczk also asked his son to touch his daughter's vagina, but according to Boroczk, his son "said no. He didn't care for it. He just wanted his diaper on." *Id.*

When asked what sexually attracted him to his own children, Boroczk responded, "Their innocence and

purity." *Id.* at 11. Boroczk further said that "it was fun" taking pornographic pictures with his children, that his children seemed to be having a good time, and that he did not think he was hurting them. Boroczk said that he chatted online almost every day with other individuals who were interested in child pornography when he had internet access at his residence. He also sent pornographic images and videos of his children to those individuals. *Id.* at 12.

## II. Sentencing

In his sentencing memorandum, Boroczk requested a fifteen-year mandatory minimum sentence. In support, Boroczk filed a report from Dr. Mickey Morgan, a clinical psychologist, who stated that Boroczk was undergoing weekly telephone counseling sessions. According to Dr. Morgan, Boroczk initially struggled with "demonstrating levels of remorse consistent with the severity of his crime." Morgan Report at 2. However, Boroczk's level of remorse "dramatically improved along with his empathy for both direct and indirect victims." Dr. Morgan stated that Boroczk's clinical prognosis for "successful long-term rehabilitation" was excellent, assuming Boroczk's "continued sincere efforts in treatment." *Id.* at 3.

Boroczk also filed a report from Dr. Michael Fogel, a psychologist. Dr. Fogel recounted Boroczk's path from viewing adult pornography on the internet to viewing child pornography and eventually creating child pornography. Dr. Fogel wrote that Boroczk had "few static, or unchangeable, risk factors that have been shown to

be associated with sexual recidivism," such as "prior criminal history, prior sexual offending, resistance to rules and supervision, employment instability, having never been married, and stranger or unrelated victims." Fogel Report at 20-21. Dr. Fogel conceded that Boroczk presented "several risk factors," including "sexual preoccupation, deviant sexual interest, offense-supportive attitudes, and intimacy deficits." *Id.* at 21. However, Dr. Fogel discounted these factors based on research which shows that incest sexual offenders recidivate at a lower rate than extra-familial sexual offenders. In addition, Boroczk would be much older and presumably be on supervised release for an extended period of time after his term of confinement. *Id.* Accordingly, Dr. Fogel concluded that Boroczk's "risk to commit a future hands-on sexual offense is low." *Id.*

In its own submissions, the government requested a guidelines sentence capped at the statutory maximum of 130 years. The government generally argued that all of the relevant sentencing factors favored the maximum possible sentence. 18 U.S.C. § 3553(a). Regarding the need to "protect the public from further crimes of the defendant," § 3553(a)(1)(C), the government submitted a letter from psychologist Dr. Tracy L. Rogers, who was asked to "comment on the methods and process employed by Dr. Fogel in arriving at his conclusions, and to point out any areas of disagreement." Rogers Letter at 1. Dr. Rogers criticized Dr. Fogel's failure to conduct a phallometric assessment, specifically the Penile Plethysmograph ("PPG"). "The single strongest predictor of sexual recidivism is sexual interest in children as

No. 12-1022                                    7

measured by phallometric assessment. Objective physio-
logical assessment is [the] best method of measuring
sexual interest/arousal, both healthy and deviant, and
the [PPG] is the gold standard of physiological assess-
ment." *Id.* at 2.[1] Dr. Rogers also criticized Dr. Fogel's
failure to offer an opinion as to whether Boroczk is a
pedophile because "sexual interest in children, a marker
for DSM-IV pedophilia, correlate[s] strongly with sexual
recidivism." *Id.* Ultimately, Dr. Rogers "disagree[d] with
[Dr. Fogel's] opinion that Mr. Boroczk is low risk
to commit additional sexual offenses" because Dr. Fogel

---

[1]  At sentencing, Dr. Rogers described the PPG as follows:

> It's an examination [that] measures deviant sexual interests
> and non-deviant sexual interests as well. The client sees—
> there's 22 segments to the test. The client is [alone] in a
> room. . . . They have a respiratory belt on, electrodes
> that measure changes in skin conductance, and they have
> a gauge that goes around their penis that measures change
> in penile circumference. They are shown videos. Each
> segment is—consists of—when it begins, they show a
> photo of the age and gender of the person that the story is
> about. The photo then leaves the screen and there's 90
> seconds of audio that describes a very sexually graphic
> scene. . . . [T]hen after the audio, then more pictures of
> the person that the story was about return.

> During the test the client is asked to press a button
> after they hear a tone. The tone indicates—when they press
> the button once, it means they think the story is persuasive;
> twice if they think it's coercive or mean or violent.

Sent. Tr. at 110-11.

did not have "sufficient evidence to offer an opinion on risk . . . ." *Id.*

At sentencing, the district court heard testimony from Dr. Fogel and Dr. Rogers in rebuttal; Dr. Morgan did not testify. On cross-examination, the government questioned Dr. Fogel about his prior testimony in a commitment proceeding in state court. Sent. Tr. at 61. In that case, Dr. Fogel advanced the opinion that an individual posed a high risk of committing future sex offenses against children because he was a pedophile. This was in spite of an actuarial assessment which indicated that this person posed a low risk of recidivism.

In announcing its sentence, the district court began by acknowledging that the guidelines range called for a life sentence, which defaulted to the maximum sentence on each of the five counts in the indictment. Then, the court considered the various factors under § 3553(a), including the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of that offense. The court explained:

> The offense in this case at its essential core consists of taking advantage of innocent and defenseless children repeatedly over a prolonged period of time for the sole purpose of personal sexual gratification. That's it. And this is done by the very person charged, not only under law but by every parameter of our society, with protecting them from such abuses. It's conduct that no civilized society can possibly allow no matter what the circumstances.

Sent. Tr. at 159.

No. 12-1022                                                    9

   With regard to specific deterrence and the need to protect the public from future crimes, the district court considered the testimony of Dr. Fogel and Dr. Rogers, ultimately rejecting Dr. Fogel's opinion as unreliable.

> Not only are some of Dr. Rogers' criticisms valid, but Dr. Fogel's own testimony, specifically that testimony in which he indicated that he felt the determination as to whether the defendant was a pedophile would be irrelevant, was frankly confusing, especially in view, as brought out on cross-examination, of the fact that he had previously testified that because a respondent suffered from pedophilia, he was more likely to commit acts of sexual violence in the future. I find those two statements irreconcilable.

*Id.* at 160-61.

The court continued:

> I find the defendant's own statements at the time of his arrest to be most revealing. It appears to be clear from the way he described his conduct about what he did with his children that he actually believed he could subject his children to such conduct without harming them. His disclaimers that he would never hurt them or did not intend to hurt them or that he stopped if they informed him they were being hurt or did not want him to continue reflect a total lack of comprehension of how any such conduct was inherently and permanently harmful to his children. And, therein, it appears to me, lies the real risk for the future.

Lacking any substantial comprehension of the violent and destructive nature of his conduct towards his own children, it seems to me, the defendant most likely lacks any real motivation to restrain himself in the future, other, of course, than the motivation that comes from the fear of being caught. But in that regard, there is no amount of supervision, no number of protective safeguards that can possibly protect other children from this defendant in the future if he himself is not motivated.

His conduct in this case, although it was his first offense, was repeated many, many times over a period of years, both as to his children and with respect to his prolific Internet activities, and leaves us with no doubt that he has an extreme sexual interest, both in child pornography and in actual physical contact with very young children. And this, it seems to me, makes protection of the public paramount in this case.

*Id.* at 161-62.

Accordingly, the district court sentenced Boroczk to "180 months on each of Counts One through Four and 120 months on Count Five, with all counts to be served consecutively." *Id.* at 162. Boroczk's projected release date is August 14, 2070, at which time he will be 93 years of age.[2]

---

[2] http://www.bop.gov/iloc2/LocateInmate.jsp (use "Search by Name" function). This projection assumes the accumulation

(continued...)

## III. Analysis

### A. Sentencing Procedures

The district court is required to follow a two-part pro-
cedure at sentencing. First, it must calculate the defen-
dant's sentencing range under the advisory guidelines.
*United States v. Dale*, 498 F.3d 604, 611 (7th Cir. 2007).
The district court correctly explained that Boroczk's
guidelines range was life in prison, which means that
the range defaulted to the maximum sentence on each
count—30 years on counts one through four and
10 years on count five, for a total of 130 years. U.S.S.G.
§ 5G1.1(a) ("Where the statutorily authorized maximum
sentence is less than the minimum of the applicable
guideline range, the statutorily authorized maximum
sentence shall be the guideline sentence"); *United States
v. Veysey*, 334 F.3d 600, 602 (7th Cir. 2003) ("The
federal sentencing guidelines direct the judge, when
there are multiple counts of conviction, to impose maxi-
mum and consecutive sentences to the extent neces-
sary to make the total punishment equal in severity to
what the guidelines would require were it not for the
statutory maxima") (citing U.S.S.G. § 5G1.2(d)); *United
States v. Craig*, No. 12-1262, 2012 WL 6572509, at *1 (7th Cir.
Dec. 18, 2012) ("the guidelines tell the judge to sen-
tence consecutively when necessary to bring the total

---

[2] (...continued)
of good time credits. 18 U.S.C. § 3624(b); *United States v. Craig*,
No. 12-1262, 2012 WL 6572509, at *1 (7th Cir. Dec. 18, 2012)
(Posner, J., concurring).

sentence into the guidelines range, even though the sentence would exceed the statutory maximum sentence for any count of which the defendant was convicted . . . .").

Second, the district court must "hear the arguments of the parties and conclude by making an individualized assessment of the appropriate sentence based on the § 3553(a) factors." *United States v. Booker*, 612 F.3d 596, 601 (7th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 49-50 (2007)). To comply with this requirement, the district court must give the parties "an opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence." *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007). Ultimately, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

Boroczk argues that the district court erred because its sentence was based on the conclusion that he was certain to recidivate for the rest of his life. This is a rather extreme mischaracterization of the rationale for the district court's sentence. Neither the district court nor the various doctors who testified or provided input at sentencing were blessed with a crystal ball to predict Boroczk's future behavior. In the absence of such certainty, the district court simply weighed the evidence before it and concluded that the risk of future crimes was a factor in favor of a lengthy sentence.

As a more specific critique, Boroczk argues that the district court either ignored or did not adequately

confront certain pieces of evidence in support of his argument that he was not likely to recidivate. For example, Boroczk presented evidence that incest offenders are less likely to recidivate than extra-familial offenders, that the risk of re-offending decreases with advancing age, and that despite an initial lack of remorse, Boroczk eventually expressed remorse for his crimes. Even though this evidence was not specifically mentioned, the district court rejected it by implication when it focused on the fact that Boroczk is a pedophile who expressed an alarming lack of remorse for his crimes after being caught. "District judges need not belabor the obvious. The judge need not be explicit where 'anyone acquainted with the facts would have known without being told why the judge had not accepted the argument.'" *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010) (citing *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)).

## B. Substantive Reasonableness

A sentence is reasonable if the district court "gives meaningful consideration to the factors enumerated in [18 U.S.C.] § 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). This court reviews the substantive reasonableness of a sentence under a deferential, abuse of discretion standard with the presumption that a sentence within or below the guidelines

range is reasonable. *United States v. Anderson*, 580 F.3d 639, 651 (7th Cir. 2009); *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008) ("A sentence within the [guidelines] range is presumptively reasonable, and it follows that a sentence below the range also is presumptively not too high") (citing *Rita v. United States*, 551 U.S. 338 (2007)).

Boroczk argues that the presumption of reasonableness does not apply when the guidelines range exceeds the statutory maximum and the court stacks consecutive sentences. This is incorrect. For example, in *United States v. Noel*, 581 F.3d 490 (7th Cir. 2009), the defendant was charged with three counts of producing and one count of possessing child pornography. The defendant's guidelines range was life in prison, which defaulted to the combined statutory maximum of 100 years' imprisonment, and the district court sentenced Noel to 80 years' imprisonment—25 years on the first three counts and five years on the last count, to be served consecutively. *Id*. at 495 n.4. In reviewing Noel's sentence, this court applied the presumption of reasonableness because the sentence was "actually twenty years *below* the guidelines sentence of one hundred years' imprisonment." *Id*. at 500 (emphasis in original). Similarly, Boroczk's 70-year sentence was 60 years below the guidelines range of 130 years' imprisonment. *See also United States v. Russell*, 662 F.3d 831, 853 (7th Cir. 2011) (applying presumption to 38-year sentence where the guidelines range was life, which reverted to the statutory maximum of 120 years); *United States v. Klug*, 670 F.3d 797, 800 (7th Cir. 2012); *United States v. Tanner*, 628 F.3d 890, 908 (7th Cir. 2010) (a guidelines range of life imprisonment "effectively

render[s] any prison sentence presumptively reasonable on appeal by the defendant").

Boroczk argues that the foregoing cases were wrongly decided because they did not consider the statutory presumption *against* consecutive sentences. 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively"). This so-called presumption has nothing to do with the calculation of a sentencing guidelines range. With respect to the guidelines, the presumption of reasonableness "reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347 (emphasis in original). Boroczk does not dispute that his guideline range was calculated correctly.

With the presumption firmly in place, Boroczk must show that his sentence is "substantively unreasonable in light of the sentencing factors set forth in section 3553(a)." *Russell*, 662 F.3d at 853 (citing *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)). The district court's sentence is not unreasonable simply because it emphasized the need for just punishment. Sentencing judges "have discretion over how much weight to give a particular factor. Although the weighting must fall 'within the bounds of reason,' those bounds 'are wide.'"

16                                        No. 12-1022

*United States v. Reibel*, 688 F.3d 868, 872 (7th Cir. 2012) (internal citations and quotations omitted). Much like the defendant in *Noel*, Boroczk's actions were "unspeakable." 581 F.3d at 501. In *Noel*, the defendant took nude photographs of his stepbrother's young son and possessed other images of child pornography. As horrible as that is to imagine, Boroczk's actions were even more monstrous because he created images and videos of himself molesting his own children, sharing these images with his online "friends." In that light, and in specific comparison to the 80-year sentence in *Noel*, Boroczk's 70-year, below-guidelines sentence is reasonable.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 1 of 166 PageID #:254
Case: 12-1022    Document: 58    Filed: 02/15/2013    Pages: 50

1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    UNITED STATES OF AMERICA,           )
                                          )
 4                 Plaintiff,             )
                                          )
 5      v.                                )  No. 09 CR 647
                                          )
 6    DARRICK C. BOROCZK,                 )  Chicago, Illinois
                                          )  August 2, 2011
 7                 Defendant.             )  10:30 a.m.

 8                 TRANSCRIPT OF PROCEEDINGS - SENTENCING
                  BEFORE THE HONORABLE RONALD A. GUZMAN
 9

10    APPEARANCES:

11    For the Plaintiff:         HON. PATRICK J. FITZGERALD
                                 United States Attorney
12                               BY:  MR. JEFFREY D. PERCONTE
                                 Assistant United States Attorney
13                               219 South Dearborn Street
                                 Suite 500
14                               Chicago, Illinois  60604
                                 (312) 353-5300
15
      For the Defendant:         FEDERAL DEFENDER PROGRAM
16                               BY:  MS. HELEN KIM SKINNER
                                      MS. CHRISTINA FARLEY JACKSON
17                               55 East Monroe Street
                                 Suite 2800
18                               Chicago, Illinois  60603
                                 (312) 621-8300
19
      Also Present:              MR. JACK LOGAN
20

21

22    Court Reporter:            NANCY C. LaBELLA, CSR, RMR, CRR
                                 Official Court Reporter
23                               219 South Dearborn Street
                                 Room 1222
24                               Chicago, Illinois  60604
                                 (312) 435-6890
25                               Nancy_LaBella@ilnd.uscourts.gov
```

A. 17

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 8 of 166 PageID #:261
Case: 12-1022    Document: 58    Filed: 02/15/2013    Pages: 50

8

```
 1          MR. PERCONTE:  We are, Judge.

 2          THE COURT:  Should we take up the issues with respect

 3  to the presentence investigation first?

 4          MR. PERCONTE:  I think that makes sense, your Honor.

 5          THE COURT:  I believe there was essentially one

 6  objection to the PSI; is that correct?

 7          MS. KIM SKINNER:  Judge, I'm sorry.  I did file

 8  objections to the presentence report; and it was based on the

 9  way that the presentence report was written and what factual

10  basis they were using to apply the four-level enhancement.  I

11  did receive the government's sentencing memorandum in which

12  they provide an alternative basis for the enhancement.  And

13  based on their --

14          THE COURT:  You're talking about the possession of

15  depictions of --

16          MS. KIM SKINNER:  Sadistic or masochistic conduct.

17          THE COURT:  Okay.

18          MS. KIM SKINNER:  Based on the government's

19  submission, I am not -- I'm not objecting anymore.

20          THE COURT:  You're going to withdraw the objection?

21          MS. KIM SKINNER:  I'll withdraw it.

22          THE COURT:  Okay.  I take it then that both sides are

23  in agreement with the presentence investigation report's

24  calculation of a total offense level of 43 and a Criminal

25  History Category I; is that correct?
```

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 9 of 166 PageID #:262
Case: 12-1022    Document: 58    Foge Filed: 02/15/2013    Pages: 50

9

 1          MR. PERCONTE:  That's correct, Judge.

 2          MS. KIM SKINNER:  Yes.

 3          THE COURT:  Which means that the guideline sentencing

 4  range is life in prison, which is greater than what is

 5  available pursuant to the statutes; therefore, the guideline

 6  sentencing range defaults to the statute's maximum range.  Is

 7  everyone in agreement with that?

 8          MS. KIM SKINNER:  We are.

 9          MR. PERCONTE:  Yes, Judge.  And that, here, is 130

10  years, I think, when all the maximums are totaled together.

11          MS. KIM SKINNER:  With a minimum of 15.

12          THE COURT:  30-year maximum as to each of Counts One

13  through Four and a ten-year maximum as to Count Five.

14          MR. PERCONTE:  That's correct, Judge.

15          THE COURT:  Okay.  That being said, evidence with

16  respect to sentencing.

17          MS. KIM SKINNER:  We do, Judge.  We would like to

18  call a witness, Dr. Michael Fogel.

19          THE COURT:  You may do so.

20          Sir, why don't you stand right up here.  Remain

21  standing.  Raise your right hand.

22          MICHAEL H. FOGEL, DEFENDANT'S WITNESS, SWORN

23                      DIRECT EXAMINATION

24  BY MS. KIM SKINNER:

25  Q.  Can you please state your name and spell your last name

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 158 of 166 PageID #:411
Case: 12-1022    Document: 58        Filed: 02/15/2013    Pages: 50

158

1   with.  I did some very monstrous things.  That's -- after I

2   was brought up to Ozaukee originally, I decided that that's

3   not what I wanted to be or who I wanted to be; so that's when

4   I got involved with the counseling and got into the bible

5   studies and decided to try and -- you know, start trying to

6   make up for what I did because I don't want to be that person.

7   I just don't, you know, know how I could ever completely try

8   and, you know, express my -- how I feel for what I did, you

9   know.  █████████████████████, but everyone that --

10  involved.  You know, I can't say I won't deserve whatever you

11  give me.  You know, I just would really like another chance in

12  society and to prove that, you know, I'm not that monster that

13  I'm being made out to be.  There's so much more that I would

14  like to do with my life and, you know, even try to help heal

15  the damage that I've done.

16          I think that's about it, your Honor.

17          THE COURT:  Very well.

18          The Court has reviewed the presentence investigation

19  report, the submissions of the parties, the exhibits that have

20  been admitted here today and that have been submitted with the

21  sentencing memorandum.  I take into consideration the

22  testimony that I've heard today; the statements from the

23  victims, both those that were read and those that came from

24  the parties that were involved themselves; the arguments of

25  the attorneys; and all of the facts that have been presented

A. 20

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 159 of 166 PageID #:412
Case: 12-1022    Document: 58        Filed: 02/15/2013      Pages: 50

159

1    to me in this regard.

2          Let me start, as the appellate court says we must,

3    with the guideline sentencing range.  It's been agreed that

4    the appropriately calculated total offense level in this case

5    is 43, Criminal History Category I, and that results in a

6    guideline sentencing provision of life, which, according to

7    the guidelines, defaults in this case to the maximum sentence

8    in each of Counts One through Four and Five because those

9    counts do not provide for a life sentence.

10          In addition to that, of course, we must consider the

11   3553 factors; among them, the nature, circumstances and

12   seriousness of the offense.  The offense in this case at its

13   essential core consists of taking advantage of innocent and

14   defenseless children repeatedly over a prolonged period of

15   time for the sole purpose of personal sexual gratification.

16   That's it.  █████████████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   █████████████████████████████████████        It's conduct that no

19   civilized society can possibly allow no matter what the

20   circumstances.

21          There's no need to attempt to describe the effect on

22   the victims, as that has been done effectively and in

23   excruciating detail by the victim impact statements that have

24   been made part of the record here today.

25          Next, we come to the need for deterrence.  The need

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 160 of 166 PageID #:413
Case: 12-1022    Document: 58    Filed: 02/15/2013    Pages: 50

160

1   for deterrence in a general sense is, as clear as I can make

2   it, what I've just said.  This is conduct that no society, no

3   civilized society can allow if it is to remain a civilized

4   society.  It just simply cannot be.

5       The need for specific deterrence and to protect the

6   public, of course, seem to merge most of the time.  And that

7   has been, I think, the litigation point in this entire

8   sentencing procedure.

9       The defendant has presented testimony by Dr. Fogel.

10  In his opinion, the defendant is a low risk to be a repeat

11  offender.  In this regard, the defendant's specific history

12  is, in part, that he has no prior convictions, arrests or

13  indications of a proclivity for such conduct in his past.

14      The government has presented the testimony of

15  Dr. Rogers, which, in summary, attacks the reliability of

16  Dr. Fogel's opinion and evaluation, arguing that his analysis

17  was not sufficiently comprehensive because it lacked the use

18  of actuarial risk measurements, failed to administer certain

19  psychological tests, contained no diagnostic impressions and

20  relied upon tests which lacked predictability value for sexual

21  offenders.

22      After sifting through all of that testimony, I find

23  that Dr. Fogel's opinion as to the risk of recidivism is just

24  simply not sufficiently reliable.  Not only are some of

25  Dr. Rogers' criticisms valid, but Dr. Fogel's own testimony,

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 161 of 166 PageID #:414
Case: 12-1022    Document: 58    Filed: 02/15/2013    Pages: 50

161

1    specifically that testimony in which he indicated that he felt

2    the determination as to whether the defendant was a pedophile

3    would be irrelevant, was frankly confusing, especially in

4    view, as brought out on cross-examination, of the fact that he

5    had previously testified that because a respondent suffered

6    from pedophilia, he was more likely to commit acts of sexual

7    violence in the future.  I find those two statements

8    irreconcilable.

9          I find the defendant's own statements at the time of

10   his arrest to be most revealing.  It appears to be clear from

11   the way he described his conduct about what he did ████████

12   ████████ that he actually believed he could subject ███

13   ████████ to such conduct without harming them.  His

14   disclaimers that he would never hurt them or did not intend to

15   hurt them or that he stopped if they informed him they were

16   being hurt or did not want him to continue reflect a total

17   lack of comprehension of how any such conduct was inherently

18   and permanently harmful ████████████   And, therein, it

19   appears to me, lies the real risk for the future.

20         Lacking any substantial comprehension of the violent

21   and destructive nature of his conduct ████████████

22   ████████ it seems to me, the defendant most likely lacks any

23   real motivation to restrain himself in the future, other, of

24   course, than the motivation that comes from the fear of being

25   caught.  But in that regard, there is no amount of

A. 23

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 162 of 166 PageID #:415
Case: 12-1022    Document: 58    Filed: 02/15/2013    Pages: 50

162

1    supervision, no number of protective safeguards that can

2    possibly protect other children from this defendant in the

3    future if he himself is not motivated.

4            His conduct in this case, although it was his first

5    offense, was repeated many, many times over a period of years,

6    both ████████████████ and with respect to his prolific

7    Internet activities, and leaves us with no doubt that he has

8    an extreme sexual interest, both in child pornography and in

9    actual physical sexual contact with very young children.  And

10   this, it seems to me, makes protection of the public paramount

11   in this case.

12           Based upon the totality of the circumstances before

13   me, the Court intends to enter the following sentence:

14   Pursuant to the Sentencing Reform Act of 1984, it is the

15   judgment of the Court that the defendant is hereby committed

16   to the custody of the Bureau of Prisons to be imprisoned for a

17   term of 180 months on each of Counts One through Four and 120

18   months on Count Five, with all counts to be served

19   consecutively.

20           While incarcerated it is recommended that the

21   defendant participate in the sex offender treatment program.

22           The Court imposes, as it must, a special assessment

23   of $500 but waives any fine, costs of incarceration or

24   supervised release.

25           Upon release from imprisonment, the defendant shall

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 163 of 166 PageID #:416
Case: 12-1022    Document: 58        Filed: 02/15/2013    Pages: 50

163

1  be placed on a life term of supervised release on each of

2  Counts One through Five.  Within 72 hours of release, he must

3  report to the probation office.

4        While on supervised release, he shall not commit

5  another federal, state or local crime; shall comply with the

6  standard conditions that have been adopted by this Court and

7  the following additional conditions:  He shall refrain from

8  any unlawful use of a controlled substance; shall submit

9  himself to random drug tests, not to exceed 104 tests per

10 year.  He shall cooperate in the collection of a DNA sample.

11 He shall not possess a firearm or any other destructive

12 device.  He shall participate in a mental health and/or sex

13 offender treatment program as directed by the probation

14 officer, which may include psychological and physiological

15 testing and also prescribed medications.  He shall register

16 with the state sex offender registration agency in any state

17 where he resides.  He shall comply with the requirements of

18 the Computer and Internet Monitoring Program as administered

19 by the United States probation officer.  Costs of monitoring

20 to be paid by the defendant.  The defendant shall not possess

21 or use a computer, camera or any device with access to any

22 online computer service at any location, including any place

23 of employment, without the prior approval of the probation

24 officer.  He shall not possess or have under his control any

25 pornographic, sexually oriented or sexually stimulating

1    materials.  He shall not patronize any place where such

2    material or entertainment is available.  He shall not have

3    contact with any person under the age of 18 except in the

4    presence of a responsible adult who is aware of the nature of

5    his background.  He shall provide the supervising probation

6    officer with copies of his telephone bills, credit card

7    statements, receipts and any other financial information

8    requested.

9          That's the Court's intended sentence.  Are there any

10   questions?

11         MR. PERCONTE:  Not from the government, Judge.

12         MS. KIM SKINNER:  No, Judge.

13         Mr. Boroczk asked whether the Court would recommend

14   Oxford as a placement in the Bureau of Prisons.

15         THE COURT:  I will not.  It's not my custom to make

16   such recommendations unless there's some family crisis or

17   illness in the family or some such situation that would

18   require it.

19         MR. PERCONTE:  Judge, actually I misspoke before.  I

20   think there is a forfeiture issue, and I will send up and give

21   to Ms. Skinner a preliminary order of forfeiture that needs to

22   go with the sentencing judgment.  This was part of his plea.

23   And so -- it's just the computers and everything.  I will send

24   a proposed order up tomorrow after I allow Ms. Skinner to take

25   a look at it.

A. 26

Case: 1:09-cr-00647 Document #: 46 Filed: 10/26/11 Page 165 of 166 PageID #:418
Case: 12-1022    Document: 58    Filed: 02/15/2013    Pages: 50

165

1        THE COURT:  Very well.  I take it there are no other

2   counts; is that correct?

3        MR. PERCONTE:  No, Judge.  There were five counts.

4        THE COURT:  And was there a waiver of appellate

5   rights in the plea agreement?

6        MS. KIM SKINNER:  No, there wasn't.

7        MR. PERCONTE:  No.

8        THE COURT:  Very well.

9        Sir, it's my duty to advise you that you can appeal

10  your conviction if you believe that your guilty plea was

11  somehow unlawful or involuntary or if there is some other

12  fundamental defect in the proceedings that was not waived by

13  your guilty plea.  You also have a statutory right to appeal

14  your sentence itself under certain circumstances, particularly

15  if you think that the sentence is somehow contrary to the law.

16       You have the right to apply for leave to appeal in

17  forma pauperis, which means without having to pay the usual

18  fee, and the clerk of the court will prepare and file a notice

19  of appeal for you if you request it.

20       With few exceptions, any notice of appeal must be

21  filed within 14 days of the actual entry of the judgment I

22  have announced I intend to enter in this case.

23       Do you have any questions about your right to appeal?

24       THE DEFENDANT:  No, your Honor.

25       THE COURT:  Very well.

A. 27

1              Anything else?

2              MR. PERCONTE:  Not from the government, Judge.

3              MS. KIM SKINNER:  Thank you, your Honor.

4              THE COURT:  Okay.

5                        *    *    *    *    *

6

7    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
8

9
     */s/ Nancy C. LaBella*                    *October 1, 2011*
10   Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25